(48 P.3d 690)

No. 86,901

MABEL LITTRICE, *Appellant*, v. STATE OF KANSAS, *Appellee.*

Opinion filed June 28, 2002.

*Virginia A. Girard-Brady*, of ABS Legal Services, LLC, of Lawrence, for appellant.

*Frank E. Kohl*, county attorney, and *Carla J. Stovall*, attorney general, for appellee.

Before GERNON, P.J., PIERRON and KNUDSON, JJ.

KNUDSON, J.: Mabel Littrice appeals from the district court's denial of her motion filed under K.S.A. 60-1507, alleging ineffective assistance of trial counsel. We remand this matter to the district court for findings of fact and conclusions of law as required under Supreme Court Rule 183(j) (2001 Kan. Ct. R. Annot. 210). See *State v. Moncla*, 269 Kan. 61, 65, 4 P.3d 618 (2000).

After hearing the evidence in the 60-1507 proceeding, the district court without stating findings of fact or conclusions of law held no evidence had been presented upon which relief could be granted. This lack of findings and conclusions unreasonably impedes appellate review.

## The Underlying Criminal Action

Littrice was charged with possession of cocaine with intent to sell after having prior convictions, a drug severity level 1 felony. Littrice's attorney, Carol Hall, filed a pretrial motion to suppress evidence seized under a search warrant. Based on the averments in the motion together with an offer of proof, the district court permitted a challenge to the allegations within the affidavit that had been presented to support the issuance of the search warrant.

See *Franks v. Delaware*, 438 U.S. 154, 57 L. Ed. 2d 667, 98 S. Ct. 2674 (1978).

The affidavit for search warrant stated, in material part:

"This affidavit and application is based on the following facts: On 06-02-94 [w]hile SIE 940006 was purchasing crack cocaine from Curtis Littrice at 713 S. 3rd [S]treet Curtis advised the CI that he was running low on crack cocaine until Mabel Littrice finishes cooking up batch at home which is the above address. The Leavenworth County Drug Task Force has received information in the past from other reliable informants that Mabel Littrice is the main crack cocaine cooker in the Leavenworth area. The Leavenworth County Drug Task Force has a taped cassette recording of Curtis Littrice advising SIE 940006 that Mabel Littrice is cooking crack cocaine at this time. Information obtained in the past has been that Mabel cooks the crack around the clock on a regular basis. SIE 940006 is willing to testify in court to the above facts. CI # 444 was in the address listed above with in [*sic*] the past 72 hrs and observed approx: 1.5 ounces of cocaine."

Littrice's motion claimed she had listened to the tape recorded conversation between Curtis and informant SIE 940006. She alleged the facts in the affidavit for the search warrant were false because the tape recorded conversation did not include either of the two statements allegedly made by Curtis.

Hall represented Littrice at the suppression hearing. Derek Burleson, a detective with the Leavenworth Police Department and assigned to the Leavenworth County Drug Task Force, testified at the hearing. Steven Traglio, a Leavenworth police officer, who was assigned to the Drug Enforcement Administration (DEA) as a task force officer, also testified. The conversation between Curtis and the informant was recorded and monitored by Traglio, and the tape had been transcribed. Neither the tape nor the transcript of the conversation is in the record on appeal, even though the transcript was admitted into evidence.

Burleson claimed the statement in the affidavit that Curtis advised the informant "Littrice is cooking crack cocaine at this time" was not quoting Curtis but referring to statements made by the informant to Traglio. Burleson testified the informant heard Curtis use the phrase " 'mom's cooking' " and explained to Traglio that " 'mom's cooking' " meant Littrice was cooking crack cocaine. Burleson claimed this explanation was correct when " 'mom's cooking' "

was taken in context with other statements on the tape and was consistent with Burleson's experience.

During cross-examination, Burleson admitted the recording did not reflect Curtis telling the informant "he was running low on crack cocaine until Mabel Littrice finished cooking up a batch at home." Rather, the transcript showed the informant was the one who said "mom cooks for me." In response, Curtis said: "[W]ell you let her know you are coming. You call her, you don't call me." Traglio told Burleson that the informant stated Curtis said he was running low on crack cocaine until Littrice finished cooking up a batch at home. His affidavit was based upon the informant's statements to Traglio after she talked with Curtis. Burleson listened to the tape recording after typing the affidavit.

Burleson admitted informant 444, which is a Leavenworth County Drug Task informant number, and informant 940006, which is a DEA informant number, is the same person. Burleson did not identify informants 444 and 940006 as the same person in the affidavit because the Drug Task Force wanted the identity of informant 444 kept confidential so she could work other cases for them. If the affidavit identified informants 444 and 940006 as the same person, then the identity of informant 444 would have been revealed when she testified in the DEA cases against Curtis and the other persons from whom she had purchased drugs for the DEA. Burleson stated the Drug Task Force assigned only one number to an informant, and an informant was useless after the informant's identity was known.

Burleson stated he had referred to this person as informant 444 on the affidavit because it was the Drug Task Force that sent her to Littrice's house to corroborate the information that was developed when she worked with the DEA as informant 940006. The Drug Task Force will not use a person as an informant until the person has signed a contract and been assigned one of its numbers. Burleson claimed he used the two informant numbers on the affidavit to show the information was received by two separate agencies, not to mislead the court.

Traglio testified he heard the conversation between the informant and Curtis as the informant bought drugs from Curtis. Traglio

stated the conversation implicated Littrice in drug activities. Traglio admitted the transcript showed that the informant told Curtis she should have something cooked for her. Curtis replied: " 'What do you mean I should have something cooked for you?' " The informant said, " 'Mom cooks for me.' " Curtis said, " 'Well you let her know that you're coming. You call her, don't call me.' " After the drug transaction was completed, Traglio debriefed the informant, who confirmed Littrice was the person who was referred to as "mom." At the debriefing, the informant also told Traglio that Curtis gets his crack cocaine from his mother, Mabel Littrice. Traglio admitted this information was not on the tape. Traglio stated he told Burleson about the informant's statements to him.

Several weeks after the suppression hearing but before a decision by the district court, Michael Jones was appointed as Littrice's new trial counsel. Jones argued the affidavit statement that a tape recording existed in which Curtis advised the informant that Littrice was cooking crack cocaine at that time in the affidavit was false because the evidence at the suppression hearing proved no such statement was made by Curtis. Jones also argued the reference to two informant numbers was misleading because it appeared there were two informants rather than one. Without stating factual findings or conclusions, the district court denied Littrice's motion to suppress.

At trial, the State presented numerous items that were seized as a result of the search warrant, including six bags of off-white rock substances, which tested positive for cocaine; several items which were considered drug paraphernalia; a total of $2,178 in cash; and $87 in food stamps. Jones did not object to the admission of the seized items based upon the denial of his suppression motion. Thus, the district court admitted all of them.

Littrice testified three other persons resided at her house and those persons slept in sleeping bags in the living room. Littrice also allowed other family members and transients to stay in her home from time to time. Littrice denied ownership of some of the seized paraphernalia items.

A jury convicted Littrice of possession of cocaine with intent to sell, and the district court sentenced her to 150 months' imprisonment.

In her direct appeal, Littrice argued the district court erred in denying her motion to suppress the evidence. Because Littrice's trial counsel failed to object to the evidence when it was offered at trial, this court refused to consider the issue. *State v. Littrice*, 23 Kan. App. 2d 1016, 1017-18, 940 P.2d 70, *rev. denied* 262 Kan. 966 (1997). Littrice's conviction was affirmed.

### K.S.A. 60-1507 Motion

Littrice's motion alleges trial counsel was ineffective because he (1) failed to object to the admission of the seized items based on the suppression motion, thereby failing to preserve the issue for appeal and (2) failed to subpoena witnesses to support her theory of the case regarding nonexclusive possession of the drugs. To support her latter allegation, Littrice attached affidavits from Shirley Workman and Kenneth Bateman. Littrice requested an evidentiary hearing regarding the latter allegation because these facts did not appear in the record. Her motion was set for an evidentiary hearing where she appeared by counsel. The judge who presided at Littrice's suppression hearing and trial also presided at the hearing on her 60-1507 motion.

At the 60-1507 hearing, Bateman testified he owned the home where Littrice resided at the time of her arrest. Bateman stated he went to the house to collect rent. He indicated Littrice often had other people staying in the house, and he had "to step over the bodies that were sleeping on the floor in the front room." Bateman claimed he was not contacted by Littrice's trial counsel to testify. Bateman's testimony and affidavit were consistent.

Earnest C. Littrice, Jr., Littrice's son, testified he had contact with Littrice about four to five times per week prior to her arrest. Earnest recalled two nephews and his former sister-in-law and her children resided with Littrice during June 1994. He was unable to recall the names of other friends and relatives who stayed a night or two with Littrice when they needed a place to stay and eat. Earnest was not contacted by Littrice's trial counsel.

Because Workman was unavailable as a witness, the parties stipulated to Workman's affidavit. Workman averred she was Littrice's neighbor at the time of the incident and Littrice's trial attorney

never contacted her about testifying at Littrice's trial. Workman also stated: "Littrice often had other people coming and going in and out of her home."

Without stating its findings of fact or conclusions of law, the district court held there was no ground upon which relief could be granted and denied Littrice's motion.

A. *Failure to Object to the Admission of Evidence*

The law is clear that a party must object to the admission of evidence in order to preserve the issue for appeal. See K.S.A. 60-404 and *State v. Jones*, 267 Kan. 627, 637, 984 P.2d 132 (1999) (a party must object to the admission of evidence at trial and state the ground of the objection when a pretrial motion to suppress has been denied in order to preserve the issue for appeal). Without a timely and specific objection, the issue is procedurally barred from an appellate decision on the merits.

In her direct appeal and in this collateral proceeding, Littrice has consistently claimed two statements in the affidavit were not included in the tape recording of the conversation between Curtis and the informant: (1) Curtis told the informant that he was running low on crack cocaine until Littrice finished cooking up a batch at home, and (2) Curtis told the informant that Littrice was cooking crack cocaine at this time. However, the affidavit specifically referred to only the last statement being on a tape recorded conversation between Curtis and the informant.

Contrary to the clear language in the affidavit, Burleson claimed the second challenged statement was not quoting Curtis but was referring to the informant's statements to Traglio after she had the conversation with Curtis. Particularly troublesome is the fact that the clear language in the affidavit indicates this statement was on the tape recording, but Burleson admitted he did not listen to the tape recording until after he typed the affidavit. Thus, once he listened to the tape recording, it should have been clear this statement was not on the recording. Yet, he did not change the specific language in the affidavit. This inaction could constitute reckless disregard for the truth of the statement.

Equally troubling, the affidavit does not indicate the first challenged statement by Curtis that he was running low on crack co-

caine until Littrice cooked a batch was on the recording. Here again, this may indicate a reckless disregard or an attempt to mislead the reviewing magistrate.

### B. Failure to Subpoena Witnesses

As we have already noted, at the 60-1507 hearing, Littrice called various witnesses to testify and presented an evidentiary affidavit to the district court to establish her claim of ineffective assistance of trial counsel. Once again, appellate review has been stymied by the lack of findings and conclusions regarding the credibility of witnesses and the evidence presented.

### Conclusion

Without findings and conclusions regarding the *Franks* hearing in the underlying criminal case or from the 60-1507 proceeding, we are unable to engage in meaningful appellate review. Accordingly, this proceeding is remanded to the district court for written findings of fact and conclusions of law as required by Supreme Court Rule 183(j). We request that the district court expedite this matter. We will retain jurisdiction to consider the merits of Littrice's appeal upon receipt of the district court's judgment consistent with this opinion.

Remanded with directions.