(177 P.3d 981)
No. 97,202

CHARLES MCHENRY, JR., *Appellee,* v. STATE OF KANSAS, *Appellant.*

Opinion filed February 29, 2008.

*Jess W. Hoeme,* county attorney, and *Paul J. Morrison,* attorney general, for appellant.

*Linda M. Barnes-Pointer,* of Junction City, for appellee.

Before MARQUARDT, P.J., GREEN and LEBEN, JJ.

MARQUARDT, J.: The State appeals the district court's grant of Charles McHenry, Jr.'s K.S.A. 60-1507 motion, finding he received ineffective assistance of trial counsel. We affirm.

In February 2001, McHenry was charged with one count of aggravated indecent liberties with a child, one count of criminal sodomy, one count of rape, and one count of aggravated criminal sodomy. The alleged victim was his daughter, N., who was 13 years old at the time.

At trial, the State claimed that N. would owe her father sexual activity for allowing her to attend social activities and giving her money. She was also the favored child in the family. It was undisputed that McHenry and his wife, N.'s mother (Mother), had a tumultuous relationship.

McHenry was convicted by a jury in August 2001 of rape, aggravated indecent liberties with a child, and criminal sodomy. He filed motions for judgment of acquittal and a new trial, which were denied. McHenry received a controlling sentence of 214 months' imprisonment. His conviction was affirmed in direct appeals to this court and the Kansas Supreme Court. See *State v. McHenry,* 276 Kan. 513, 78 P.3d 403 (2003).

In October 2004, McHenry filed a K.S.A. 60-1507 motion claiming that his trial counsel was ineffective for failing to impeach the State's witnesses or present favorable evidence. He also claimed that new evidence existed which would likely prove exculpatory. Attached to the motion were affidavits from many of McHenry's friends and relatives containing information related to McHenry's professed innocence.

The district court held an evidentiary hearing on McHenry's motion. Mitch Christians, McHenry's trial counsel, testified extensively at the hearing. After hearing all of the evidence and considering the written submissions from the parties, the district court concluded that there was a lack of thorough investigation, citing inconsistencies in testimony of the State's witnesses. The district court found Christians' performance ineffective. The district court also found that there was newly discovered evidence which could not have been produced at trial and ordered that McHenry "be discharged from custody unless the state of Kansas chooses to again prosecute [McHenry], in which event a new trial is ordered." The State appeals that decision.

### Jurisdiction

Initially, we must determine if this court has jurisdiction to hear the State's appeal. Generally, appeals from the State are governed by K.S.A. 22-3602(b), but this appeal does not fall within any of the enumerated categories. However, K.S.A. 60-1507 actions are civil in nature and not criminal; therefore, such actions are governed by the rules of civil procedure. *Smith v. State*, 22 Kan. App. 2d 922, 923, 924 P.2d 662 (1996). Therefore, the State has the right to appeal the district court's decision under K.S.A. 2007 Supp. 60-2102(a)(4).

### Ineffective Assistance of Counsel

On appeal, the State contends that Christians did provide effective assistance of counsel by applying a trial strategy and the systematic presentation of evidence consistent with the theory of McHenry's defense. The State argues that Christians' failure to delve into minute disagreements during the trial was reasonable strategy.

The State believes that the district court improperly revisited the jury's verdict when entering the finding of ineffectiveness of counsel and maintains that Christians knew about everything that McHenry now disputes.

Kansas appellate courts do not have a well-established standard of review after a 60-1507 motion is granted and the State appeals. Generally, when a defendant appeals from the denial of a 60-1507 motion, the appellate court determines whether the factual findings of the district court are supported by substantial competent evidence, and whether those findings are sufficient to support its conclusions of law. *Bledsoe v. State*, 283 Kan. 81, 88, 150 P.3d 868 (2007). We find that this same standard of review applies when the 60-1507 motion is granted and the State appeals. See *Bellamy v. State*, 285 Kan. 346, 172 P.3d 10 (2007).

A claim alleging ineffective assistance of counsel presents mixed questions of fact and law requiring de novo review. *Bledsoe*, 283 Kan. at 91. Before counsel's assistance is determined to be so defective as to require reversal of a conviction, the defendant must establish two things. First, the defendant must establish that counsel's performance was deficient. This requires a showing that counsel made errors so serious that counsel's performance was less than that guaranteed to the defendant by the Sixth Amendment to the United States Constitution. Second, the defendant must establish that counsel's deficient performance prejudiced his defense. This requires a showing that counsel's errors were so serious as to deprive the defendant of a fair trial. *Bledsoe*, 283 Kan. at 90.

In McHenry's motion, he claimed that N. recanted her allegations several times, claiming that Mother coerced her into making the accusation so that McHenry would not gain custody of the children while Mother went to Germany with the armed forces. McHenry details "startling" inconsistencies in the statements made by prosecution witnesses at trial. The disputed issues include whether Mother drank alcohol, whether Mother attended bingo on February 9, 2001, despite a blizzard, and where N. stayed after McHenry was arrested.

McHenry also claimed that during his trial, two of his relatives overheard Mother and N. arguing in a bathroom, where N. said

that what she and Mother were doing was wrong and she did not want to testify against McHenry. This conversation was not made known to the jury.

The new evidence referenced by McHenry in his motion included N.'s new allegations of rape by several different men and rumors that N.'s brother R. admitted that the allegations against McHenry were "completely untrue."

In the journal entry, the district court noted that Christians and McHenry met in person only twice; most conversations occurred over the telephone. When detailing Christians' trial strategy, the court noted that Christians did not investigate small discrepancies, such as Mother's attendance at bingo in February 2001 or whether N.'s brothers were awake or asleep during the time of one alleged incident. The district court also cited Christians' failure to investigate the prosecution witnesses and their reputations for veracity, his failure to investigate N.'s school records, and his failure to investigate a prior child in need of care case regarding N.'s allegations of sexual abuse by McHenry and others.

The district court noted that McHenry told Christians "who his witnesses were," and faulted Christians for failing to investigate them. The jury was not informed that Mother had charges filed against her for a crime involving dishonesty. The district court also believed Christians failed to properly investigate the incident in the bathroom where N. said that she did not want to testify against McHenry.

We note that the evidentiary hearing on McHenry's 60-1507 motion was held 5 years after his original trial and that Christians understandably could not remember exact details of the trial. Christians testified that there was no physical evidence in this case and he believed that the trial would be a credibility contest. With credibility the main issue, Christians did not interview anyone in the community about the reputation for veracity of any of the prosecution witnesses. He also acknowledged that he did not personally interview anyone at N.'s school, although his investigator did speak with school administrators.

Christians acknowledged that he did not call any witnesses to testify that Mother and N. fabricated prior molestation allegations, although he did try to raise the issue during cross-examination.

Christians testified that he viewed the videotapes of interviews prior to trial. The videotapes were not played as part of McHenry's case-in-chief. Christians testified that he did not move to admit the videotapes because he did not want the jury to again hear N. detail the abuse because N. used graphic language to describe what McHenry did to her when she was interviewed. Christians testified that the discrepancies in testimony were "minor," and he did not want to "heavily publicize" the continued references to N.'s abuse allegations.

Christians did not interview N.'s friend with whom N. spent the night during the pendency of the original accusations, N.'s mother, any of N.'s siblings, N.'s grandmother, the KBI agent who interviewed N., N.'s boyfriend with whom she spoke on one of the evenings in question, or any of the witnesses whose names were provided by McHenry. Christians admitted that he did not investigate the specifics of the weather on the alleged bingo night.

At trial, there was some evidence regarding N. making a rape allegation in Stafford County. Christians testified that he possibly made three calls but did not investigate further. Christians did not cross-examine N. about the case, even though she testified about it on direct examination. Further, Christians admitted that he did not consult with an expert about dealing with a child who might have a history of sexual abuse.

Christians defended his failure to investigate Mother's and N.'s character evidence because he worked for the public defender's office, where they had only one investigator. Christians explained that his trial strategy was to narrow the focus to a "clean argument or two" that could be clearly presented to the jury. Christians testified that the larger defense strategy was a "he said she said" case where he needed to show problems with N.'s testimony so that the jury would see that the events simply could not have happened as N. testified.

McHenry's sister, who heard the exchange between N. and Mother in the restroom, told the defense investigator what she heard, but she did not get the opportunity to speak with Christians. Christians did not recall the woman telling anyone that N. claimed McHenry was innocent. Christians did not otherwise believe the

incident to be important, since he described the woman who reported the incident as "partisan."

The district court determined that Christians' representation of McHenry was ineffective based on the fact that he failed to investigate the prosecution's witnesses in order to discover "inconsistencies and fabrications" with their testimony. The district court placed particular emphasis on the fact that Christians did not call the witnesses who heard N. tell Mother that McHenry was innocent. In making that finding, the district court rejected Christians' claim that N. never alleged that McHenry was innocent.

To some extent, Christians' decisions regarding trial strategy are protected from scrutiny by this court. "Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable, and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. [Citation omitted.]" *State v. Gleason*, 277 Kan. 624, 644, 88 P.3d 218 (2004).

There is no question that Christians could have proceeded without investigating some of the minute details of the case. However, Christians' failure to investigate any of the prosecution witnesses, failure to contact any of the witnesses McHenry suggested, or to do any investigation on N.'s prior abuse allegation in Stafford County did render his representation ineffective. Christians did not defend these decisions as the most effective trial strategy, but defended his decision on the fact that he worked for a public defender's office with limited investigative resources.

In this case, there was no physical evidence, which meant that the trial turned on credibility between the prosecution and defense witnesses. Christians' failure to investigate key issues surrounding the prosecution witnesses meant he was unprepared to present McHenry's most effective defense. Given that fact, we agree with the district court that Christians' performance fell below an objective standard of reasonableness and that his failure to perform was prejudicial to McHenry. We affirm the district court's decision.

### Motion for a New Trial

The district court ruled that McHenry presented new evidence which could not have been produced at trial which warranted the

granting of his 60-1507 motion. The new evidence involved a recantation by one of McHenry's other children, specifically that the family's trial testimony was fabricated. There was also an allegation that N. falsely accused two men of rape subsequent to McHenry's trial.

On appeal, the State contends that none of this evidence was new and all of it could have been presented at trial.

A two-part test is applied in deciding a motion for a new trial based on newly discovered evidence: (1) The defendant must show that the newly proffered evidence could not have been produced at trial with reasonable diligence; and (2) the newly discovered evidence is of such materiality that a reasonable probability exists that it would produce a different result upon retrial. *Rice v. State*, 37 Kan. App. 2d 456, 467, 154 P.3d 537, *rev. denied* 284 Kan. 946 (2007). The abuse of discretion standard applies to the decision of whether to grant a new trial based on newly discovered evidence. *State v. Thomas*, 257 Kan. 228, 234, 891 P.2d 417 (1995).

In the instant case, newly discovered evidence relating to a witness' recantation of the abuse allegations would be extremely significant and would not have been discoverable at trial. If the State chooses to prosecute the case again, all issues raised in these proceedings may be considered.

Affirmed.