(204 P.3d 659)
No. 99,028

SHEA MOLL, *Appellee*, v. STATE OF KANSAS, *Appellant*.

Opinion filed April 10, 2009.

*Matt J. Maloney*, assistant district attorney, *Nola Tedesco Foulston*, district attorney, and *Stephen N. Six*, attorney general, for appellant.

*Kurt P. Kerns*, Ariagno, Kerns, Mank & White L.L.C., of Wichita, for appellee.

Before GREENE, P.J., GREEN and LEBEN, JJ.

GREENE, J.: The State appeals from the district court's order granting Shea Moll's motion pursuant to K.S.A. 60-1507, arguing the court's fact findings were unsupported and its conclusions of

law were insufficient to support a vacatur of Moll's convictions and a new trial. Initially, we examine our jurisdiction to review the court's order for a new trial and conclude that our jurisdiction is proper because the civil proceedings under K.S.A. 60-1507 were final upon the district court's order reassigning the case to the criminal trial docket. We then examine the district court's journal entry in the 60-1507 proceeding and conclude that it fails to support the relief granted, thus requiring that we reverse and remand for further proceedings.

### Factual and Procedural Background

In Sedgwick County Case No. 04 CR 831, the State charged Moll with aggravated escape from custody, in violation of K.S.A. 21-3810(a)(1), arising from Moll's failure to return to residential community corrections following work release on February 11, 2004. Before the State located him, Moll became intoxicated and caused a vehicle collision, which severely injured the occupants of the other vehicle. Consequently, in Sedgwick County Case No. 04 CR 3254, the State charged Moll with two counts of aggravated battery, in violation of K.S.A. 21-3414(a)(2)(A), and driving under the influence of alcohol (DUI), in violation of K.S.A. 2004 Supp. 8-1567(a)(2). The second count of aggravated battery was subsequently amended to K.S.A. 21-3414(a)(2)(B), a severity level 8 felony. Because Moll had been on probation for another offense, the State also moved to revoke his probation in Sedgwick County Case No. 02 CR 611.

Moll's retained counsel, Danny Saville, entered plea negotiations with the State. Initially, the State was unwilling to offer any substantial incentive for Moll's plea. Ultimately, the State offered a sentencing recommendation of the mitigated sentence within the appropriate grid box for the aggravated escape charge in 04 CR 831 but warned Saville that the State planned to seek the aggravated sentence within the appropriate grid box for aggravated battery charges in 04 CR 3254 and planned to seek consecutive sentencing on all counts.

Moll rejected the State's proposal for 04 CR 3254 but accepted the offer for 04 CR 831, and he subsequently signed plea forms in

both cases, admitting responsibility for all charged offenses. At the plea hearing, the district court specifically noted that Moll had entered an agreement in 04 CR 831 but was pleading without an agreement in 04 CR 3254. Saville affirmed the State's recitation of the plea agreement, and Moll indicated that he understood the plea agreement as articulated by the State.

When the district court questioned Moll about his understanding of his rights and the consequences of entering guilty pleas, Moll specifically acknowledged that Saville had fully discussed the charges and the rights contained in the plea form, that he was satisfied with Saville's representation, and that he had no complaints about Saville's representation or the court's treatment of him. Moll asserted that he had read the plea form, discussed the form with Saville, believed the pleas were in his best interests, and voluntarily made the decision to enter the pleas. Moll also stated that he understood that the court was not bound by any agreements entered by the parties and that he could receive as severe a penalty as he would receive if he were convicted after a trial, including consecutive sentencing. The court asked Moll for an account of the events for which he was entering a plea, and Moll admitted that he had driven while intoxicated to the extent that he possessed a breath-alcohol concentration of .224 and that he had been involved in an automobile accident which recklessly caused severe bodily injuries to the victims. The court accepted the pleas, finding them voluntarily and knowingly entered.

Moll filed motions for downward durational and dispositional sentencing departures, which were subsequently denied. At sentencing, the district court revoked Moll's probation in 02 CR 611 and ordered Moll to serve 11 months in prison. In 04 CR 831, the court imposed a 19-month sentence, the mitigated sentence within the appropriate grid box, and ordered the sentence to be served consecutive to the sentence in 02 CR 611. In 04 CR 3254, the court imposed a 114-month prison term for the severity level 5 aggravated battery conviction, a 7-month prison term for the severity level 8 aggravated battery conviction, and 6 months in jail for the misdemeanor DUI conviction. The court ordered the three

sentences to be served concurrent to one another but consecutive to the sentence imposed in 04 CR 831.

Almost a year after sentencing, Moll filed the present action, seeking to withdraw his pleas because of ineffective assistance of counsel. Moll alleged that his counsel was ineffective for failing to conduct any meaningful investigation into the charged offenses, failing to file any pretrial motions, and failing to conduct a meaningful defense. The motion attached an affidavit of Jay Greeno, who opined that Saville's representation of Moll had deprived Moll of his constitutional right to effective assistance of counsel.

After a preliminary hearing, the district court concluded that Moll's motion presented substantial claims warranting an evidentiary hearing. The district court held an evidentiary hearing on April 12, 2007. At the conclusion of the hearing, the district court directed the parties to submit findings of fact and conclusions of law. Ultimately, the district court adopted the findings of fact and conclusions of law presented by Moll and ordered Moll's convictions in 04 CR 831 and 04 CR 3254 vacated and reassigned the cases to the criminal docket for trial.

When the State objected to the journal entry pursuant to Kansas Supreme Court Rule 170 (2008 Kan. Ct. R. Annot. 241), the district court held a hearing to settle the journal entry. At the hearing, the State argued that the journal entry failed to accurately reflect the testimony presented during the evidentiary hearing and that the journal entry did not enable the State to ascertain the basis for the court's ruling. Without addressing the State's concerns, the district court affirmed its adoption of Moll's proposed findings of fact and conclusions of law.

### Is the District Court's Order Granting Relief Under K.S.A. 60-1507 Subject to Appeal by the State?

After initial briefing in this appeal, we questioned jurisdiction on our own motion and ordered the parties to submit supplemental briefs on the question whether the district court's order granting relief under K.S.A. 60-1507 was subject to appeal by the State. Our order noted that the State may appeal only in situations specifically enumerated within K.S.A. 22-3602(b) and that the only appeal al-

lowed the State from an order granting a new trial is limited to off-grid or indeterminate A or B felonies. K.S.A. 22-3602(b)(4). Here, the crimes do not qualify for such an appeal. Moreover, we noted that a K.S.A. 60-1507 action is civil in nature and is governed by the Kansas Code of Civil Procedure, which limits appeals of right to final decisions. K.S.A. 60-2102(a)(4). The order appealed from by the State is not final in the sense that it reassigns the matter to the criminal docket for a new trial. An order granting a new trial in a civil case is not a final order from which a party may appeal as a matter of right. *Oertel v. Phillips*, 197 Kan. 113, 117, 415 P.2d 223 (1966).

The State argues that the district court's order granting relief to Moll under 60-1507 is a final decision "as it terminates the civil case at the district court level." We agree. Viewing a habeas corpus action under K.S.A. 60-1507 as an independent and original civil proceeding, such an action is terminated by the district court's order either granting or denying relief to the movant. *Drach v. Bruce*, 281 Kan. 1058, 1080, 136 P.3d 390 (2006), *cert. denied* 549 U.S. 1278 (2007) (finding the law of the case doctrine inapplicable in an appeal from a K.S.A. 60-1507 proceeding because the proceeding was a separate action from Drach's direct criminal proceedings); *State v. Thomas*, 239 Kan. 457, 459, 720 P.2d 1059 (1986) (citing *Heflin v. United States*, 358 U.S. 415, 3 L. Ed. 2d 407, 79 S. Ct. 451 [1959], for the proposition that a motion under K.S.A. 60-1507 created a new, civil proceeding independent of the criminal case); *State v. Andrews*, 228 Kan. 368, 375, 614 P.2d 447 (1980) ("[H]abeas corpus proceedings and motions under 60-1507 are civil in nature and not controlled by the constitutional or statutory requirements applicable in criminal cases."). Once a district court has ruled on the relief requested, the civil proceeding has ended, except for any appeal of the decision.

Our conclusion is consistent with aspects of statutory language contained in K.S.A. 60-1507. K.S.A. 60-1507(d) provides: "An appeal may be taken to the appellate court as provided by law from the order entered on the motion as from a final judgment on application for a writ of habeas corpus." Moreover, Supreme Court Rule 183(k) (2008 Kan. Ct. R. Annot. 249) provides that "[a]n

appeal may be taken to the Court of Appeals from the order entered on the motion as in a civil case."

We are also persuaded by the State that if we held otherwise, the State would have no vehicle to seek meaningful appellate review of a district court order granting relief under 60-1507. Once a new trial has been granted to the movant, there would be no effective route thereafter to review the propriety of the new trial.

We hold that the State may appeal an unfavorable disposition of a 60-1507 motion in the same manner as a final judgment in a civil proceeding. Our holding is consistent with the outcome of two other panels of our court that have addressed this jurisdictional question. See *McHenry v. State*, 39 Kan. App. 2d 117, 119, 177 P.3d 981 (2008); *Hilson v. State*, No. 99,421, unpublished opinion filed February 6, 2009, *pet. for rev. on other grounds* filed March 9, 2009.

### *Is the District Court's Journal Entry Sufficient to Support the Relief Granted and to Enable Meaningful Appellate Review?*

In its first issue on appeal, the State challenges the district court's factual findings and legal conclusions related to Moll's claim for ineffective assistance of counsel. Where the district court has held an evidentiary hearing on a K.S.A. 60-1507 motion and has made findings of fact and conclusions of law in compliance with Kansas Supreme Court Rule 183(j) (2008 Kan. Ct. R. Annot. 247), an appellate court reviews the district court's decision under a mixed standard of review. The reviewing court accepts as true any findings of the district court that are supported by the evidence and any reasonable inferences that might be drawn from the evidence. If such findings are sufficient to support the court's conclusions of law, the reviewing court will affirm the district court's decision. However, the district court's conclusions of law are subject to unlimited review. *Bellamy v. State*, 285 Kan. 346, 354-55, 172 P.3d 10 (2007); see also *McHenry*, 39 Kan. App. 2d at 120 (applying the same standard to an appeal by the State).

In *Harris v. State*, 31 Kan. App. 2d 237, 238-39, 62 P.3d 672 (2003), this court applied the requirements of Rule 183(j), as interpreted by *State v. Moncla*, 269 Kan. 61, 65, 4 P.3d 618 (2000).

First, the court noted that " '*Moncla* counsels us to monitor district court compliance with Rule 183(j) more strictly than we may have in the past,' " 31 Kan. App. 2d at 239, and then stated:

"As *Moncla* explained, the purpose of requiring stricter compliance with Rule 183(j) is to ensure an opportunity for meaningful review. 269 Kan. at 65. Without explicit district court findings and conclusions on the specific issues raised by the movant, it is difficult if not impossible for this court or the Supreme Court to evaluate whether the motion should have been granted or denied.

. . . .

"In this case, the oral findings and conclusions reflected in the hearing transcript also are deficient. They address neither the two-part standard for evaluation of ineffective assistance of counsel claims, [citation omitted], nor the two-part standard for evaluation of newly discovered evidence claims, [citation omitted]. They do not specifically respond to any of Harris' claims about his counsel's alleged errors. They must, in order for us to have meaningful opportunity for appellate review." 31 Kan. App. 2d at 239.

Rule 183(j) has remained unchanged since *Harris* and makes no distinction between a journal entry denying relief and a journal entry granting relief in a K.S.A. 60-1507 proceeding. Therefore, the reasoning of *Moncla* and *Harris* is equally applicable to the State's appeal of the district court's decision in a K.S.A. 60-1507 proceeding.

A prisoner seeking relief under K.S.A. 60-1507 bears the burden of establishing both parts of the ineffective assistance of counsel test to a preponderance of the evidence. See Rule 183(g). Recently, in *Pabst v. State*, 287 Kan. 1, 25, 192 P.3d 630 (2008), the Kansas Supreme Court emphasized the specificity required in a K.S.A. 60-1507 motion:

"[O]ur rule governing the sufficiency of a 60-1507 motion appears to require more specificity. Supreme Court Rule 183(e) dictates that '[a] motion to vacate a sentence shall be deemed sufficient if in substantial compliance with the form' set forth by Judicial Council. 2007 Kan. Ct. R. Annot. 244. In paragraph 10 of that form, movant is directed to '[s]tate concisely all the grounds on which you base your allegation that you are being held in custody unlawfully.' In the next paragraph, movant is directed to concisely state the facts which support each of the grounds. That language calls for specificity in the manner in which the movant claims ineffective assistance of counsel. Further, when a movant submits the form, he or she 'is presumed to have listed *all* of the grounds upon which he is relying.' *Smith v. State*, 195 Kan. 745, 747, 408 P.2d 647 (1965)."

Because such specificity is required in a K.S.A. 60-1507 motion, Rule 183(j) demands, at a minimum, that the journal entry designate which of the movant's allegations, if any, entitle the movant to relief in order to permit meaningful review. The journal entry in the present case fails to designate the ground or grounds alleged that constituted ineffective assistance of counsel.

Here, the district court's journal entry falls short in several regards. First, it contains no findings of fact but, instead, merely summarizes the evidence presented at the 60-1507 hearing. In three separately numbered paragraphs, there is set forth a brief summary of the testimony of two local attorneys who testified as expert witnesses, a brief summary of the testimony of Moll, and a summary of the testimony of Moll's counsel. A summary of the testimony received is not equivalent to findings of fact; findings are a *determination* by the court of the facts supported by the evidence in the record, not merely a summary of the evidence. Black's Law Dictionary 684 (8th ed. 2004).

Here, there was no finding by the court with regard to any of the testimony summarized, whether and to what extent it was found credible, and how the court weighed that testimony to the extent the witnesses may have been inconsistent. Without factual findings, adopting one version of the facts or another, it is impossible to determine whether the district court believed that Saville provided no defense advice to Moll, that the advice was insufficient to fully apprise Moll of the consequences of a plea, or that Saville provided adequate communication but the ineffective assistance counsel claim was supported by other allegations.

Second, the court's conclusions of law set forth the *standard* to set aside a plea on the ground of ineffective assistance and the *standards* for determining the general validity of a guilty plea, but missing is the key *conclusion* that, but for counsel's errors, the defendant would not have entered the pleas and would have insisted on going to trial. See *State v. Muriithi*, 273 Kan. 952, Syl. ¶ 1, 46 P.3d 1145 (2002).

Third, the entirety of the journal entry seems to have confused ineffective assistance claims in connection with Moll's pleas with ineffective assistance claims in connection with Moll's sentencing.

Obviously, it was improper for the district court to have vacated Moll's convictions and reassigned the case to the trial docket based on ineffective assistance of counsel at his sentencing. Some recognition and distinction between these claims must be drawn before we can provide meaningful review.

In summary, the journal entry fails to demonstrate adoption of the facts that would support the allegation that Moll would not have entered a plea and would have elected to go to trial had he received effective assistance of counsel. Due to the lack of factual findings and the lack of application of the two-part test for ineffective assistance of counsel to such findings, appellate review of the judgment is substantially hampered, if not rendered impossible. Because this court cannot ascertain the specific reasoning utilized by the district court, we cannot determine whether the court's order was based on the proper application of the two-part test to facts that were not specifically articulated in the journal entry or whether the court's order was the result of a misapplication of the law.

Findings and conclusions of this nature are required in order that we can provide meaningful appellate review. Where the district court "fails to state the controlling facts and its reasons for the decision, neither the litigants nor the appellate courts can determine the genuine basis upon which the trial court entered its judgment." Miller, *Bench Decisions and Opinion Writing*, 47 J.K.B.A. 247, 250 (Winter 1978). The policy underpinning for Rule 183(j) is precisely that for K.S.A. 60-252. Our Supreme Court elaborated on the policy in *Brown v. Wichita State University, P.E.C., Inc.*, 217 Kan. 661, 664-65, 538 P.2d 713 (1975), in this manner:

"[T]he district court should state what it considers to be controlling facts and the legal principles upon which [its decision] was [based]. Otherwise, [the appellate] court upon . . . review will be required to explore and consider every possible legal theory which may be said to be involved . . . . Judges of a court of record, unlike a jury which may render an unreasoned decision in a general verdict, must, under our statute and rule . . . 'go on the line,' so to speak, and render a 'reasoned decision'—that is, assign reasons for the decisions rendered."

It is not appropriate for us to provide the missing pieces here. We decline to make credibility assumptions in a contested matter;

we decline to make findings of fact based solely on the district court's summary of the evidence; we decline to apply legal standards to a mere evidence summary; and we decline to speculate as to the precise basis for a ruling where the basis has not been provided by the district court. The district court did not consider this an easy case; at the close of evidence, the court referenced "the toughest prong of [the] test" and characterized its task as "the challenge." It is not our function to complete the district court's task that is required by the rules; in fact, we believe our Supreme Court has made it clear that we are to monitor district court compliance with the rule, and remands of this nature have been legion since that mandate. See, *e.g., Bellamy v. State*, 285 Kan. 346, 354-55, 172 P.3d 10 (2007); *State v. Hoge*, 283 Kan. 219, 221-22, 150 P.3d 905 (2007); *Gaudina v. State*, 278 Kan. 103, 108, 92 P.3d 574 (2004); *Swenson v. State*, 35 Kan. App. 2d 709, 717, 135 P.3d 157 (2006), *aff'd in part and rev'd in part on other grounds* 284 Kan. 931, 169 P.3d 298 (2007); *Harris*, 31 Kan. App. 2d 237, Syl.; *Gilkey v. State*, 31 Kan. App. 2d 84, 87-88, 60 P.3d 347 (2003); *Littrice v. State*, 30 Kan. App. 2d 800, Syl., 48 P.3d 690 (2002); *Stewart v. State*, 30 Kan. App. 2d 380, 381-82, 42 P.3d 205 (2002); *State v. Bolden*, 28 Kan. App. 2d 879, 883-84, 24 P.3d 163, *rev. denied* 271 Kan. 1038 (2001).

We have no alternative but to remand for specific factual findings and legal conclusions as required by Rule 183(j). See *Harris*, 31 Kan. App. 2d at 240. We believe there is no need for any further evidentiary proceedings, but the district court is directed to conduct whatever proceedings it deems necessary for full compliance with Rule 183(j).

### Did the District Court Abuse Its Discretion in Admitting Moll's Expert Witness Testimony?

The State next contends that the district court improperly overruled the State's objections to Moll's expert witnesses and allowed the witnesses to testify, even though Moll had not provided notice to the State under K.S.A. 60-226(b)(6).

At the hearing on the K.S.A. 60-1507 motion, the State objected to the testimony of Greeno and Schoenhofer for lack of notice by

the defense. The State acknowledged that Moll had attached Greeno's affidavit to the motion and that the affidavit had previously been used in the nonevidentiary hearing but argued that Moll had not notified the State that Greeno would be testifying at the evidentiary hearing. The State further alleged that Moll had not provided notice of Schoenhofer until the morning of the hearing.

Moll's counsel conceded that he had not provided notice to the State. He explained that Greeno had originally been retained as an expert, but, when Moll's hearing was continued, Greeno believed he had a conflict with a jury trial he was handling. Moll's counsel then asked Schoenhofer to review the case. Later, Greeno's case concluded, making him available to testify. Moll's counsel indicated that he sent the State no reports because neither expert prepared a report.

The district court provided no direct ruling on the objection but permitted Greeno and Schoenhofer to testify. After Schoenhofer testified on direct examination, the State renewed its objection to his testimony. This time, the district court specifically overruled the objection. Prior to Greeno's testimony, the State again objected because of the lack of notice and because the testimony was purportedly duplicative of Schoenhofer's testimony, based upon the representation of Moll's counsel. Again, the district court overruled the objection.

Citing *Warren v. Heartland Automotive Services, Inc.*, 36 Kan. App. 2d 758, 760-761, 144 P.3d 73 (2006), the State contends that the failure to disclose expert testimony according to the requirements of K.S.A. 60-226(b)(6) causes the expert testimony to become inadmissible. K.S.A. 60-226(b)(6) is a civil discovery provision and provides in material part:

"(B) Except as otherwise stipulated or directed by the court, this disclosure, with respect to a witness (i) whose sole connection with the case is that the witness is retained or specially employed to provide expert testimony in the case or (ii) whose duties as an employee of the party regularly involve giving expert testimony, shall state the subject matter on which the expert is expected to testify, the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion."

As noted in the State's brief, K.S.A. 60-237(c)(1) provides sanctions against a party who fails to comply with the discovery requirements of K.S.A. 60-226(b)(6) and states, in pertinent part:

"(c) *Failure to disclose; false or misleading disclosure; refusal to admit.* (1) A party that without substantial justification fails to disclose information required by subsection (b)(6) or (e)(1) of K.S.A. 60-226, and amendments thereto, shall not, unless such failure is harmless, be permitted to use as evidence at trial, at a hearing, or on a motion any witness or information not so disclosed."

Essentially, the State's argument for the inadmissibility of Moll's expert witnesses involves a sanction for a purported discovery violation, not a challenge to the relevance or foundation of the expert testimony. In fact, the State stipulated to the witnesses' qualifications. The State has cited no authority for applying the civil discovery rules to a proceeding under K.S.A. 60-1507, and independent research has revealed no Kansas case applying K.S.A. 60-226(b)(6) or K.S.A. 60-237(c)(1) to such a proceeding.

Our Supreme Court has acknowledged that aspects of the Code of Civil Procedure are not necessarily applicable to K.S.A. 60-1507 proceedings. In *Pabst*, 287 Kan. at 23-25, the Kansas Supreme Court recently considered whether the relation-back provisions of the Code of Civil Procedure applied in the context of a K.S.A. 60-1507 proceeding. Initially, the court noted that the Code of Civil Procedure governs K.S.A. 60-1507 proceedings " 'insofar as applicable.' " 287 Kan. at 23 (quoting Supreme Court Rule 183[a] [2007 Kan. Ct. R. Annot. 243]). The *Pabst* Court further reasoned that K.S.A. 60-1507 motions required specificity in alleging the factual and legal bases for the claims being made. Therefore, where an additional motion raised allegations that differed in the factual basis from a claim alleged in the original motion, *e.g.*, ineffective assistance of counsel, the allegations did not relate back to the original motion. 287 Kan. at 25.

Similarly, the expert disclosure requirements of K.S.A. 60-226(b) are not applicable here. The discovery provisions of K.S.A. 60-226 are designed to define the factual and legal arguments in a civil proceeding initiated by notice pleading. See *Halley v. Barnabe*, 271 Kan. 652, 656-57, 24 P.3d 140 (2001) (noting that motions to dismiss are not favored because the Code of Civil Procedure provides for notice pleading and the ultimate determination of legal theories and issues is unsettled until after discovery has been completed). In the context of notice pleading cases, discovery

rules are designed to prevent a party from surprising an opposing party at trial. See *Warren*, 36 Kan. App. 2d at 760.

In contrast, the procedure authorized for the disposition of a motion under K.S.A. 60-1507 does not specifically authorize extensive discovery. Under the specific pleading requirements of K.S.A. 60-1507, the policy rationale behind the discovery rules is diminished. In a motion under K.S.A. 60-1507, a prisoner is required to allege the grounds for relief with factual and legal specificity. See *Pabst*, 287 Kan. at 25. As a result, the State should be able to determine the factual and legal nature of the movant's claim from the motion without resort to discovery. Significantly, none of the other discovery provisions of K.S.A. 60-226 were followed in this case.

We note that our conclusion is consistent with federal practice. In discussing federal habeas corpus proceedings under 28 U.S.C. § 2254 (1994) (Rule 6a), the United States Supreme Court noted: "A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course." *Bracy v. Gramley*, 520 U.S. 899, 904, 138 L. Ed. 2d 97, 117 S. Ct. 1793 (1997). The *Bracy* Court then noted that Congress under the direction of the Supreme Court had adopted rules governing federal habeas corpus that created a limited right to discovery. 520 U.S. at 904. In contrast, neither the Kansas Legislature nor the Kansas Supreme Court has adopted a rule similar to the rule discussed in *Bracy*.

Accordingly, we hold the discovery rules of K.S.A. 60-226(b)(6) are not applicable in the context of a K.S.A. 60-1507 proceeding.

Furthermore, even if the civil discovery rules are applicable to K.S.A. 60-1507 proceedings and the district court erred in refusing to exclude Moll's expert testimony, the district court's error is subject to the harmless error standard of review.

"No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect

in the proceeding which does not affect the substantial rights of the parties." K.S.A. 60-261.

Although the State objected to the admission of the evidence, it did not seek a continuance to prepare for the testimony or to obtain its own expert witness but acknowledged that it was ready to proceed with cross-examination of the experts. The State also stipulated to the witnesses' qualifications to testify as experts. The witnesses both relied exclusively on Saville's case file and the court documents to formulate their opinions regarding Saville's representation. Neither witness provided any information that was not either produced at the hearing in some other form of evidence or reasonably inferred therefrom. Consequently, the State has failed to establish that the error prejudiced any substantial right.

Reversed and remanded with directions.

LEBEN, J., concurring in part and dissenting in part: I join the court's opinion on the issues of jurisdiction and evidence, but I dissent regarding the court's decision that remand to the district court for more findings is needed. The majority concludes that the district court's journal entry was insufficient for us to tell what it had ruled and the basis for the ruling. Though it's true that the journal entry could have done a better job connecting the dots, no real guesswork is required here.

The evidence as recited in the district court's journal entry showed that:

- Moll pled guilty on the same date to criminal charges in two cases. In one case, he was charged with two counts of aggravated battery and one county of driving under the influence. He pled guilty to those charges at arraignment without a plea agreement. In the other case, he pled guilty to a charge of aggravated escape from custody in exchange for a plea agreement in which the State agreed to recommend the low number in the applicable sentencing grid box.
- Moll's attorney, Danny Saville, filed no contested pretrial motions.
- Saville hired no investigator or expert.

- Saville conducted no pretrial investigation beyond talking to a victim-witness advisor and "running into one of the arresting officers at a driver's license hearing," where they discussed the case.
- Two experienced Wichita criminal-defense attorneys testified that Saville's representation was ineffective and fell below local standards.
- Both of the expert witnesses testified that Moll received no benefit from Saville's representation.
- Both of the expert witnesses testified that valid pretrial suppression issues should have been raised.
- Both of the expert witnesses testified that "advising [Moll] to plead guilty to the most serious charges[,] without any benefit [offered] by the State, was improper."
- Moll "testified that he would never have entered into a plea without the benefit of any State concession had he known the full ramification of such action."
- Moll said he believed he would get probation if he followed his lawyer's advice; Saville said that he was " 'shocked' " when Moll didn't get probation and that he had " 'expected' " probation would be granted to Moll.

Beyond evidence, we must determine whether the district court has addressed "the two-part standard for evaluation of ineffective assistance of counsel claims." *Harris v. State*, 31 Kan. App. 2d 237, 239, 62 P.3d 672 (2003). In *Harris*, the court required more findings in part because the district court had not addressed the standard either for ineffective assistance claims or for newly discovered evidence claims, which were both at issue in *Harris*. Only the standard for ineffective assistance claims is at issue here.

The district court in Moll's case correctly stated the standard for an ineffective assistance of counsel claim. Its journal entry noted that Moll must show (1) "That counsel's performance fell below the standard of reasonableness" and (2) "That there was a reasonable probability that but for counsel's errors, the defendant would not have entered the plea and would have insisted on going to trial." The district court cited *State v. Muriithi*, 273 Kan. 952, Syl.

¶ 1, 46 P.3d 1145 (2002), and the two-part test found in *Muriithi* remains good law. See *Jones v. State*, 2008 WL 2186354, at *2 (Kan. App. 2008) (unpublished opinion) (citing *Muriithi*). The district court also cited these rules for judging the performance of an attorney:

- Rule 1.1 of the Kansas Rules of Professional Conduct requires that an attorney provide "competent representation," which "requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation." (2008 Kan. Ct. R. Annot. 400).
- The Kansas Supreme Court said in *Jones v. State*, 207 Kan. 622, 625, 485 P.2d 1349 (1971), that "[t]he standard for determining the validity of a guilty plea is whether the plea represents a voluntary and intelligent choice among alternative courses of action open to the accused."
- The United States Supreme Court said in *Hill·v. Lockhart*, 474 U.S. 52, 56, 88 L. Ed. 2d 203, 106 S. Ct. 366 (1985), that "the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases' " (quoting *McMann v. Richardson*, 397 U.S. 759, 771, 25 L. Ed. 2d 763, 90 S. Ct. 1441 [1970]).

After setting out these factual matters and the appropriate legal standards, the district court then announced its conclusions:

"Clearly, trial counsel's advice in this case fell short and was outside the parameters contemplated by both the State and Federal safeguards. This failure to provide competent legal advice rendered defendant Moll's plea involuntary.

". . . Trial counsel's representation of Mr. Moll fell below the objective standard of reasonableness, and his deficient performance prejudiced Mr. Moll, violating *Strickland v. Washington*, 466 U.S. 668, [80 L. Ed. 2d 674, 104 S. Ct. 2052] (1984)."

So what has the district court told us in the journal entry? First, the judge didn't consider this a close case. He began his conclusion, "Clearly, trial counsel's advice in this case fell short . ; . ." Second, the attorney's advice was short of *both* state and federal standards: the state standards of competence (Rule 1.1) and the need for an "intelligent choice among alternative courses of action"

(*Jones*, 297 Kan. at 625) as well as the federal standards about whether counsel's advice regarding the plea was within the range of competence demanded of attorneys (*Hill*, 474 U.S. at 56). The court found that the Saville's representation clearly fell below *those* standards. Third, the attorney's "deficient performance prejudiced Mr. Moll."

But did the district court tell us exactly *how* that deficient performance prejudiced Moll? I would certainly think so. The court said that the attorney's performance prejudiced Moll, violating *Strickland*. *Strickland* sets out the same two-part test found in *Muriithi*, except that the claim of inadequate representation in *Strickland* takes place at trial but takes place in entering a plea in Moll's case. The district judge had already cited the prejudice test (the second part of the two-part test in *Muriithi* and in *Strickland*) as it applies to the entry of a plea: the defendant must show a reasonable probability that, but for counsel's errors, the defendant would not have entered the pleas and would have insisted on going to trial. The court already told us in its factual findings that Moll said he wouldn't have entered the pleas had he gotten the sort of advice his experts said he should have received. It seems clear to me that the district court *believed* Moll on that point—at least enough to find the required "reasonable probability" that Moll wouldn't have entered the pleas had he gotten adequate representation.

The majority contends that the court's journal entry only summarizes the evidence without making any factual findings. That seems an unreasonable view when the district court indicated that a major issue in the case wasn't a close one and ruled for the defendant after both reciting evidence and stating the correct legal standards. Let's take some examples regarding the factual matters found in the district court's journal entry. The court actually said: "Mr. Saville conceded that . . . he hired no investigator or expert." While it could have said more definitively that "Saville hired no investigator or expert," nothing in the district court's phrasing of that fact should leave any doubt about whether it's true.

Perhaps a more difficult case is presented by the district court's handling of whether Moll would have entered into the pleas had

he received adequate representation. It's true that the district court only recited his testimony in the factual section of its journal entry: "[Moll] testified that he would never have entered into a plea without the benefit of any State concession had he known the full ramification of such action." But by later correctly stating the legal standards and ruling for Moll, the district court implicitly indicated that it accepted Moll's testimony on this point.

We really don't have to read that far between the lines to figure out what the district court ruled here. In *Harris*, Justice Beier, then a member of our court, said that the panel had "thoroughly reviewed the hearing transcript and record to ascertain whether we can characterize the district judge's specific findings and conclusions as implied by its oral statement at the hearing." 31 Kan. App. 2d at 239-40. Thus, the district court's findings may be implied by its other statements. Justice Beier referred to other oral statements, but the district judge here has implicitly found that Moll wouldn't have entered the pleas had he received appropriate legal representation. The court did so by correctly stating the legal standard and then ruling for Moll. That ruling necessarily implies that the district court gave enough credibility to Moll's testimony to make that ruling.

If we go beyond the text of the district court's journal entry, we can quickly find comments from the district court and evidence that strengthens these conclusions:

- The district court indicated in its comments to the attorneys at the end of the evidentiary hearing that "the toughest prong of this test is going to be that any prejudice occurred as a result of this." The court said it wanted to give Moll's attorney "fair warning that's going to be the problem" so that it could be addressed in argument and in proposed findings. This reinforces two conclusions. First, the district court didn't consider it a close question whether Saville's representation had been inadequate. Second, the district court was focused directly on the prejudice part of the two-part test, so its ruling in favor of Moll certainly meant that it found his testimony sufficiently credible to meet the applicable test.

- The State has suggested that some of Saville's inadequate work, such as at the sentencing hearing, didn't affect whether Moll would have entered a plea, which took place well before sentencing. Thus, the State suggests that the district court may have relied upon Saville's later poor work in determining whether Moll's pleas were entered based on inadequate representation. But the district court wasn't concerned about Saville's representation at the sentencing. The court accurately summarized Moll's key claim early in the evidentiary hearing: "But your complaint primarily here is the lack of effective counsel in preparing the case and obtaining any kind of a decent plea deal." And at the end of the evidentiary hearing, the judge told counsel, "I don't know that we have to worry very much about what happened at the sentencing. My concern is the work-up of the case, the investigation and what not . . . ."

- Saville testified that he was "shocked" that Moll didn't receive probation and that it was "a travesty that he didn't get that opportunity." Saville indicated to Moll that probation was likely:
  "I think the specific statement would have been made or was made that if [the judge] didn't give him probation, I'm never going to have a client that's going to get probation in front of [this judge]—I mean, I've never had one that has done as well [in reforming himself after the offense] as he did. I'm sure that wasn't—you know, that wasn't a guarantee, but that's pretty strongly worded."

- Saville made these statements to Moll even though Saville knew that prison was the *presumptive* sentence for the severity level 5 aggravated battery to which Moll pled guilty. Saville testified that the State's plea offer, which was rejected, was that Moll plead guilty, agree to the maximum sentence, "and follow the presumption, which would be where he would go to prison." The Kansas sentencing guidelines provide a presumptive prison sentence for anyone convicted of a severity level 5 felony who has a prior felony conviction. See K.S.A. 21-4704(a). Everyone knew that Moll had a prior felony con-

viction: he pled guilty to the severity level 5 aggravated battery charge just after he had pled guilty to a felony escape charge, which was specifically for escaping while in lawful custody on conviction for a felony. Saville also knew how this would appear to the sentencing judge: in all, Moll pled guilty to four new offenses, three felonies and a misdemeanor DUI, *all committed while on felony probation*. Regardless of any steps Moll had taken to turn his life around after committing these new offenses, it's hard to imagine how a defense attorney could advise him that it was *likely* that he'd receive probation in these circumstances.

- In sum, Saville led his client to believe that probation was *likely* in a case in which state statutes provided that a *prison* sentence was *presumed*. He led his client to believe that probation was *likely* in a case where—at a joint sentencing hearing on both pleas—the court would be reminded that Moll had fled the Sedgwick County Residential Center while on felony probation before committing two additional felonies beyond the felony escape. Saville did this without any independent investigation of the facts of the case and without filing potentially meritorious pretrial suppression motions. He then had his client plead guilty, straight up, with no plea agreement. The district court and the two expert witnesses were correct: Saville's representation was inadequate and below acceptable standards, and that was not a close call.

Justice Beier emphasized that for inadequate findings, "remand is an inefficient remedy for this recurring problem." The court thoroughly reviewed the record for any implied findings before remanding for additional ones because of that inefficiency. *Harris*, 31 Kan. App. 2d at 239-40. Her point is well-taken here. The district court set aside Moll's pleas and granted a trial in its order on June 1, 2007. Notwithstanding the ruling of the majority, I am at a loss to understand the purpose of this appeal. The evidence here strongly supported Moll's claim. Two respected criminal-defense attorneys testified that Saville hadn't done an adequate job. After reviewing the district's journal entry and the record, I cannot en-

vision any possible scenario in which the district court on remand would be unable to provide even more detailed findings that would fully support its ruling. I see no reason to go through that exercise. The district court has already said enough.