No. 81,584

STATE OF KANSAS, *Appellee,* v. DAVID A. MONCLA, *Appellant.*

(4 P.3d 618)

Opinion filed April 21, 2000.

*Mary D. Prewitt,* assistant appellate defender, and *Jessica R. Kunen,* chief appellate defender, were on the brief for appellant.

*Elizabeth Rogers,* assistant district attorney, *Nola Foulston,* district attorney, and *Carla J. Stovall,* attorney general, were on the brief for appellee.

The opinion of the was delivered by

SIX, J.: This is a newly discovered evidence case. David A. Moncla was convicted of first-degree murder, K.S.A. 21-3401. His conviction was upheld on appeal. See *State v. Moncla,* 262 Kan. 58, 936 P.2d 727 (1997). Shortly after the direct appeal mandate was filed, Moncla moved for a new trial under K.S.A. 22-3501 based on newly discovered evidence. He submitted two affidavits from prison inmates. The affidavits stated another person admitted involvement in and/or knowledge of the murder for which Moncla was convicted. The district court conducted a nonevidentiary hearing, heard arguments, and summarily "overruled" (denied) the motion. Moncla appeals.

Our jurisdiction is under K.S.A. 22-3601(b)(1) (Moncla was convicted of an off-grid crime).

The question before us is whether the district court abused its discretion by denying Moncla's motion for new trial. In answering

the question, we narrow the focus to whether a district court can deny the motion without evaluating the credibility and materiality of the paper evidence. The answer is "no"; thus, we find abuse of discretion and reverse.

## FACTS

Moncla received a "hard-40" sentence for the murder of Diane Swinney. See K.S.A. 21-4638. Swinney died after sustaining 18 blows to the head with a hammer. An employee of Swinney's named Kevin Robertson discovered her body. Swinney owned a bar. She lived just a few blocks away from her bar in the upstairs apartment of a home. Moncla and two other individuals had been staying at the home. Moncla sometimes slept on a recliner in Swinney's room. On the night of her death, Swinney closed her bar around 2 a.m. The next morning Moncla left Swinney's house on foot. He told one of the other house occupants he was late for work. He also said Swinney was having sex with someone and he did not wish to watch. Moncla went to John Bayliff's house. He told Bayliff he was awakened that morning by a man hitting him over the head with a gun. According to Moncla, three men were in the room. Moncla was pushed into a bathroom. He could not see Swinney, but heard several slaps or hits and heard someone say, "[W]e're going to have to take a loss on this one." *Moncla*, 262 Kan. at 62. He also heard the name Kevin. After the men left, Moncla went into the bedroom and saw Swinney on the floor. She was beaten up, crying, and holding a pillow over her head. Swinney told Moncla to "stay out of it," so he left. 262 Kan. at 62. Bayliff related this story at trial.

In Moncla's direct appeal, his defense was described as follows:

"The defendant testified on his own behalf and claimed that others had committed the crime. He presented evidence of Swinney's mounting debts to suggest a motive. He also attacked the police investigation as inadequate in following up leads on other suspects. The defendant claimed that Robertson, the man who found the body, was involved in the murder and that a man named Danny Long committed the murder. The police had received a Crime Stopper tip on Long. In addition, Robert Wisley, a friend of Long's, testified that Long approached him in a bar and confessed to Swinney's murder, specifying that he used a hammer to do it." 262 Kan. at 63.

Moncla filed a motion for new trial based on affidavits from Scott Staggs and Allen Richards, two inmates at the El Dorado Correctional Facility. Staggs stated that he was a cellmate with Robertson at El Dorado, during which time Robertson claimed to be involved in the death of Swinney. According to Staggs, Robertson specifically admitted being with Swinney on the night of her death. Robertson told Staggs he was there "partying" with his brother. Robertson and his brother asked Swinney for some "dope." When Swinney did not comply, they began to threaten her, and soon Robertson's brother hit Swinney in the head with a hammer. The brother continued to hit Swinney about 18 times. The two then put a pillow over Swinney's head. They washed their hands in the kitchen sink and left through the back door.

In the second affidavit, Allen Richards explained that he met Robertson in the El Dorado infirmary while Robertson was recovering from knee surgery. According to Richards, Robinson said he knew of the Swinney murder and how the police had put the wrong man in jail. Robertson said there was no way Moncla could have committed the murder. Richards believed Robertson was suggesting that he had committed the crime. Then Robertson explained to Richards that he had used a hammer as his weapon and that Swinney had died from being hit in the head. When Robertson realized that Richards knew Moncla, the discussion ended.

The record does not explain Robertson's presence at El Dorado Correctional Facility. Presumably he is serving time on unrelated charges.

Moncla was not present at the motion hearing, but he was represented by counsel. After brief arguments, the district judge, who also was the judge at Moncla's trial, said: "Thank you very much. At this time, based upon all matters before the Court, based upon the record which occurred at the trial, after reviewing all these matters, the court feels that a new trial is not proper at this time. I will overrule the motion."

## DISCUSSION

Our standard of review here is abuse of discretion. See *State v. Thomas*, 257 Kan. 228, Syl. ¶ 3, 891 P.2d 417 (1995). We said in

64

*Thomas:* " 'Although defendants are tireless in seeking new trials on the ground of newly discovered evidence, motions on this ground are not favored by the courts and are viewed with great caution.' " 257 Kan. at 233 (quoting 3 Wright & Miller, Federal Practice & Procedure: Criminal 2d § 557, p. 315 [1982]). The test for determining whether a new trial is warranted based on newly discovered evidence has two parts: (1) The defendant bears the burden of establishing the newly proffered evidence is indeed "new"—that is, it could not, with reasonable diligence, have been produced at trial; and (2) the evidence must be of such materiality that there is a reasonable probability it would produce a different result upon retrial. *Thomas,* 257 Kan. at 231.

Moncla takes issue with the district court's failure to analyze the newly discovered evidence under the two-part test of *Thomas.* Moncla points out that there was no issue as to whether the evidence was "newly discovered," yet the district court did not analyze the credibility or materiality of the two affidavits. Moncla argues the district court should have at least held an evidentiary hearing to explore the credibility and materiality of the new evidence. The key inquiry is whether the affidavits in this case were credible and of such materiality that there is a reasonable probability they would produce a different result upon retrial. See *Thomas,* 257 Kan. at 231.

Moncla had no automatic right to a full evidentiary hearing on his motion. See *State v. Dunn,* 243 Kan. 414, 436, 758 P.2d 718 (1988). The question here is whether the district court can deny such a motion without analyzing the creditability of the affiants and the materiality of the claimed new evidence. In *Thomas* we determined it is within the district court's discretion to deny a motion for new trial without granting an evidentiary hearing. We are now asked by the State to move one step beyond *Thomas* and conclude that district courts may do so without evaluating the credibility and materiality of the paper evidence submitted in support of the motion.

The procedure for the motion at issue here is comparable to the procedure for a K.S.A. 60-1507 motion. *Dunn,* 243 Kan. at 436; *State v. Bryant,* 227 Kan. 385, 391, 607 P.2d 66 (1980); see Su-

preme Court Rule 183 (1999 Kan. Ct. R. Annot. 197). "The [district] court shall make findings of fact and conclusions of law on all issues presented." Rule 183(j). The district court's ruling on Moncla's motion does not comply with either *Thomas* or Rule 183(j).

In *Thomas* the central question was whether the district court, without holding an evidentiary hearing, has discretion to deny a new trial motion based solely on paper evidence. *Thomas* reviewed *State v. Bradley*, 246 Kan. 316, 787 P.2d 706 (1990); *Dunn*, 243 Kan. 414; and *State v. Holley*, 238 Kan. 501, 509-10, 712 P.2d 1214 (1986). In both *Bradley* and *Holley*, the district court denied the new trial motion based solely on affidavits. We reviewed those cases under the abuse of discretion standard and affirmed the district courts' dismissals. However, in *Bradley, Holley,* and *Thomas,* the district court actually analyzed the credibility of the affiants and the materiality of the new evidence. Here, we can only speculate as to the basis of the district court's decision. There may be, as we said in *Thomas,* "valid reasons for deferring to the trial court's decision, even when it is based solely on 'paper evidence.' " 257 Kan. at 234. The problem here is we are left guessing what those "valid reasons" might be.

The merits of Moncla's motion aside, the fundamental problem with the district court's approach here is that it impedes appellate review. How are we to review the decision, even under the abuse of discretion standard, when neither findings nor conclusions based on the findings are stated? Motions for new trials, like many 60-1507 motions, may be meritless and, thus, not entitled to evidentiary hearings. However, the district court must tell us what its findings are and why it concluded the motion to be without merit if we are to conduct any sort of meaningful appellate review.

Reversed and remanded for further proceedings.