(24 P.3d 163)
No. 84,797

STATE OF KANSAS, *Appellee,* v. RICKY BOLDEN, *Appellant.*

Opinion filed April 20, 2001.

*Jennifer C. Roth*, assistant appellate defender, and *Jessica R. Kunen*, chief appellate defender, for appellant.

*Elizabeth Reimer*, assistant district attorney, *Nola Foulston*, district attorney, and *Carla J. Stovall*, attorney general, for appellee.

Before GREEN, P.J., BEIER, J., and DAVID PRAGER, Chief Justice Retired, assigned.

BEIER, J.: Defendant-appellant Ricky Bolden seeks review of the district court's summary denial of his motion to withdraw his guilty plea. He argues (a) that his due process rights were violated because his motion was denied by means of an order prepared by the State; (b) that the district court failed to make findings of fact and conclusions of law as required; (c) that his counsel was ineffective for failing to investigate a diminished capacity defense; (d) that his counsel was ineffective by failing to explain the elements of the charges and urging him to plead guilty without a sufficient factual basis; and (e) that his counsel was ineffective by failing to inform him of a possible upward departure and failing to take reasonable steps to mitigate a harsher penalty. We reverse for appointment of counsel and evidentiary hearing.

The pertinent facts and events in the procedural history are these: The evidence at trial proved that Bolden forced his way into a trailer where his wife Dixie and children were staying; that he began to beat her, turned on the gas stove burners, and said they were all going to die; and that he then chased her into a neighbor's trailer and hit the neighbor and kicked Dixie in the head before he set himself on fire. He sustained burns over 55 percent of his body.

As a result of this incident, Bolden was charged with one count each of aggravated burglary, aggravated battery, criminal threat, and misdemeanor battery. He pleaded guilty to all of the charges without a plea agreement. At the time, he told the court that he

was satisfied with defense counsel, that he had an opportunity to discuss the charges with his attorney, and that he did not have any questions. The district judge read the charges to Bolden and found a sufficient factual basis to accept his plea.

In Bolden's presentence investigation interview, he explained his version of the incident. Bolden claimed that Dixie let him in the house; however, he admitted that he threatened her and said he was going to blow up the house. Bolden admitted to striking his wife and chasing her out of the house. He stated that he intended to die that day, but he was not going to kill anyone else. Bolden said he eventually went back to the trailer, rubbed alcohol on himself, and set himself on fire. Bolden did not allege any memory loss in the interview. Bolden said he had undergone a psychiatric evaluation after the incident, and he had since been taking medication for depression and pain.

Defense counsel filed a motion for downward departure and a motion challenging criminal history. The State filed a motion for upward departure.

At sentencing, defense counsel argued in support of the downward departure that Bolden's criminal history and subsequent presumptive range was higher than originally anticipated when he entered the plea. Defense counsel said Bolden was aware of the possibility that the State might seek an upward departure, and, although it could possibly double the sentence, Bolden would proceed to sentencing. The district court granted the State's motion for upward departure on the aggravated battery charge, doubling the high sentence to 324 months, to be served concurrent with the other sentences. Bolden's later challenge to his criminal history and sentencing were affirmed on appeal by this court.

The district court summarily denied the motion that is the subject of this appeal by means of an order drafted and submitted by the assistant district attorney. The order stated that there were no appearances; that the motions, files, and records of the case did not show manifest injustice; and that Bolden's conclusory allegations did not entitle him to relief. The order did not address each of Bolden's arguments individually.

## Preparation of Order

Bolden first argues the district court violated his due process rights by using an order prepared by the State in denying his motion. Bolden contends the procedure used constitutes an appearance by the State, and, under *State v. Nunn*, 247 Kan. 576, 802 P.2d 547 (1990), he was entitled to notice and the opportunity to appear in person or through counsel.

This court recently addressed a similar issue in *Miller v. State*, 28 Kan. App. 2d 39, 13 P.3d 13 (2000), *rev. denied* ___ Kan. ___ (2001). Miller filed a K.S.A. 60-1507 motion to withdraw his plea because of malicious or discriminatory prosecution and manifest injustice, and he filed an amended motion to impose sanctions and remove the charge from his record. The district court denied the motions without holding a hearing or appointing counsel, and the order was prepared and submitted by the district attorney.

On appeal, Miller argued that, under *Nunn*, he was entitled to counsel and a hearing and the district court violated his due process rights under Supreme Court Rule 183(j) (2000 Kan. Ct. R. Annot. 210) by having the district attorney prepare the order. This court found *Nunn* inapplicable and went on to discuss the effect of having the district attorney prepare the order:

"The order does not reflect that a hearing was held, and we do not believe that ordering the State's attorney to prepare the journal entry of judgment in a 60-1507 proceeding constitutes a hearing. The trial judge's signature on the order signifies that the findings and conclusions are those of the trial judge, not the assistant district attorney. However, in a proceeding under K.S.A. 60-1507, where the district judge decides not to grant a hearing and directs the State's attorney to draft the journal entry of judgment, the State's attorney is required to follow Supreme Court Rule 170 (1999 Kan. Ct. R. Annot. 191). If the movant is not represented by counsel, the State's attorney shall serve the movant with a copy of the draft of the journal entry." 28 Kan. App. 2d at 42.

The court concluded that, if having the district attorney draft the order was error, it was harmless because Miller's claims were meritless. 28 Kan. App. 2d at 42-44.

The relevant facts of this case are almost identical to *Miller*, in that the district court did not appoint counsel or hold a hearing on the motion but merely notified the district attorney's office of the

outcome and asked an assistant to prepare an order. As in *Miller*, we do not believe there was a hearing under *Nunn*. We also adhere to *Miller*'s holding regarding Rule 170(a) (2000 Kan. Ct. R. Annot. 205), despite neither side's satisfaction with our interpretation of that Rule. Evidently the Rule was not followed here. However, because we remand for appointment of counsel and an evidentiary hearing, the issue is moot. We simply remind the district court and the State that *Miller* requires journal entries of judgment in 1507 cases to be treated like other journal entries of judgment under Rule 170(a).

### Sufficiency of Findings and Conclusions

In *State v. Jackson*, 255 Kan. 455, 459, 874 P.2d 1138 (1994), the Kansas Supreme Court held that the procedures governing post-conviction motions filed under K.S.A. 60-1507 should apply to motions to withdraw guilty pleas after sentencing. Bolden argues the district court erred by failing to make findings of fact and conclusions of law on all of the issues presented in his motion, as required by Supreme Court Rule 183(j). We agree that the order was insufficient.

Last year, in *State v. Moncla*, 269 Kan. 61, 4 P.3d 618 (2000), the Kansas Supreme Court made clear that Rule 183(j) has teeth. Moncla had filed a motion for new trial based on newly discovered evidence, which included affidavits that stated another person had admitted to involvement in the murder for which Moncla was convicted. After a nonevidentiary hearing, the district judge said only: " 'Thank you very much. At this time, based upon all matters before the Court, based upon the record which occurred at the trial, after reviewing all these matters, the court feels that a new trial is not proper at this time. I will overrule the motion.' " 269 Kan. at 63.

On appeal, Moncla argued the district court should have held an evidentiary hearing to explore the credibility and materiality of the evidence and should have explicitly analyzed and ruled upon the evidence alleged to be newly discovered. The Kansas Supreme Court held Moncla had no automatic right to an evidentiary hearing, but it compared the procedure for motions for new trial to the

procedure for K.S.A. 60-1507 motions. It found that the district court's ruling did not comply with Rule 183(j). 269 Kan. at 64-65.

Observing that it could only speculate as to the basis of the district court's decision, the court said:

"The merits of Moncla's motion aside, the fundamental problem with the district court's approach here is that it impedes appellate review. How are we to review the decision, even under the abuse of discretion standard, when neither findings nor conclusions based on the findings are stated? Motions for new trials, like many 60-1507 motions, may be meritless and, thus, not entitled to evidentiary hearings. However, the district court must tell us what its findings are and why it concluded the motion to be without merit if we are to conduct any sort of meaningful appellate review." 269 Kan. at 65.

*Moncla* counsels us to monitor district court compliance with Rule 183(j) more strictly than we may have in the past. Compare *Jackson*, 255 Kan. at 462 (affirming denial of motion because movant failed to allege sufficient factual basis in motion); *Wright v. State*, 5 Kan. App. 2d 494, 495, 619 P.2d 155 (1980) (affirming denial of motion without a hearing because movant failed to show new evidence would add to that already in the record). Under *Moncla*, the district court's order in this case was insufficient because it failed to make findings of fact and conclusions of law regarding each of Bolden's arguments. The court's failure to address the two-part ineffective assistance of counsel test is very similar to the court's neglect of the applicable test for newly discovered evidence in *Moncla*. Even if this case were not ripe for reversal for an evidentiary hearing, it would be remanded for compliance with Rule 183(j).

## Diminished Capacity

Bolden first argues that his attorney was ineffective by failing to investigate an insanity or diminished capacity defense. Bolden relies on evidence that he could not remember the incident, that he set himself on fire, that he underwent a mental evaluation, and that he had an unusual blank expression on his face while beating Dixie. He asserts these factors should have prompted his counsel to explore such defenses.

After sentencing, the district court may, in its discretion, set aside a judgment of conviction and permit the defendant to set aside his plea to correct manifest injustice. K.S.A. 2000 Supp. 22-3210(d).

" 'To set aside a guilty plea because ineffective assistance of counsel has rendered the plea involuntary, a defendant must show that counsel's performance fell below the standard of reasonableness and that there is a reasonable probability that but for counsel's errors the defendant would not have pleaded guilty and would have insisted on going to trial.' " *State v. Shears*, 260 Kan. 823, 830, 925 P.2d 1136 (1996) (quoting *State v. Wallace*, 258 Kan. 639, Syl. ¶ 2, 908 P.2d 1267 [1995]).

The State correctly points out that both the insanity and diminished capacity defenses had been abolished by the time of Bolden's crimes. See *State v. Jorrick*, 269 Kan. 72, 81, 4 P.3d 610 (2000) ("K.S.A. 22-3220 prevents a defendant from raising insanity or diminished capacity as a defense.") But the analysis of this issue does not begin and end with that simple statement.

After January 1, 1996, a defendant might still raise a defense based on mental disease or defect if the disease or defect was such that it could negate the *mens rea* element of the crime. In our view, Bolden's motion raises substantial issues of fact and law regarding the availability of this defense in his case and his attorney's responsibility to investigate and evaluate its utility. The State admits that at least the burglary count required proof of specific intent and that the defense of mental disease or defect negating intent replaced what was formerly called the defense of diminished capacity or insanity. Bolden is entitled to appointment of counsel and an evidentiary hearing on this claim.

### Failure to Explain Charges and Ensure Factual Basis

Bolden next argues his attorney was ineffective because she failed to explain the elements of his charges and urged him to enter his plea when there was no factual basis.

The files and records of this case conclusively dispose of these claims in favor of the State. At his plea hearing, Bolden told the judge he had been provided the opportunity to discuss the charges with his attorney and he did not have any questions about the charges. The district court read the charges to Bolden and was

informed that the aggravated burglary and criminal threat charges included elements of the "intent to commit a felony" and the "intent to terrorize another." Bolden did not tell the court that he could not remember the incident at the plea hearing and proceeded to plead guilty.

Moreover, a factual basis existed for Bolden's guilty pleas to aggravated burglary, aggravated battery, criminal threat, and misdemeanor battery. A police detective interviewed Dixie shortly after the incident, and she told him that Bolden forced open the locked door of her home; threatened to blow up the trailer; and punched her, breaking her jaw. When she ran outside and Bolden followed, Bolden hit a neighbor who attempted to defend her and kicked her in the head.

### Allegations Regarding Sentencing

Bolden's final argument is that counsel was ineffective because she gave him the impression he would automatically be found guilty by a jury and sentenced to a harsher prison term if he did not plead as charged. Bolden contends his counsel did not inform him that an upward departure could result in a harsher sentence, and she failed to take reasonable steps to mitigate the imposition of such a sentence.

"Defense counsel has an obligation to advise a defendant as to the range of permissible penalties and to discuss the possible choices available to the defendant. [Citation omitted.] A mere inaccurate prediction by defense counsel, however, does not constitute ineffective assistance of counsel." *State v. Solomon*, 257 Kan. 212, 223, 891 P.2d 407 (1995).

At the plea hearing, the district court informed Bolden of the possible range of imprisonment for each of his charges, depending upon his criminal history. At sentencing, defense counsel explained to the court that she and Bolden had concerns about criminal history because Bolden might have other convictions, and they were aware the State might seek to depart from the presumptive sentence. Still, defense counsel said Bolden was willing to proceed. Bolden did not interject and say that he was unaware of the possibility of an upward departure or a harsher sentence. The record

does not support Bolden's contention that counsel was ineffective by failing to discuss the possibility of an upward departure with him.

Bolden's argument that his attorney was ineffective by failing to take reasonable steps to prevent an upward departure sentence also is meritless. Defense counsel filed a motion for a downward departure, and she argued against an upward departure at sentencing, pointing out that Bolden's criminal history score was higher than originally anticipated. Defense counsel's actions were not unreasonable.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.