NOT DESIGNATED FOR PUBLICATION

No. 119,884

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

FRANCIS JOSEPH SMITH,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Bourbon District Court; MARK ALAN WARD, judge. Opinion filed December 18, 2020. Affirmed.

*Gerald E. Wells*, of Jerry Wells Attorney-at-Law, of Lawrence, for appellant.

*Kurtis Wiard*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before ATCHESON, P.J., WARNER, J., and WALKER, S.J.

PER CURIAM: Francis Joseph Smith appeals from the Bourbon County District Court's order denying his motion for habeas corpus relief after an evidentiary hearing at which he and the lawyer representing him during the criminal trial testified. At that trial, a jury convicted Smith of four felony sex crimes, including two Jessica's Law offenses, and two related misdemeanors. We find no error in the district court's ruling and, therefore, affirm.

1

We do not recount the evidence from the 2009 trial in detail. Those details may be found in the Kansas Supreme Court's opinion affirming Smith's convictions in the direct criminal case. *State v. Smith*, 299 Kan. 962, 964-69, 327 P.3d 441 (2014). Smith paid a 13-year-old girl and a 15-year-old girl to pose in bikinis for a set of photographs he took at his home. Smith knew the girls and had interacted with them before the photo session. During the session, Smith occasionally touched the girls ostensibly to adjust their swimwear for the next series of photos. For some of the photos, he asked the girls to kiss or fondle each other. Throughout the session, the girls wore the bikinis. As we understand the evidence, the photographs were sexually provocative but not legally obscene.

The State charged Smith with aggravated indecent liberties with a child and aggravated indecent solicitation of a child with respect to the younger girl, which were off-grid Jessica's Law crimes because of her age. The State charged Smith with indecent liberties with a child and indecent solicitation of a child with respect to the older girl; those were on-grid guidelines crimes because the girl was between 14 and 16 years old. The State also charged two misdemeanor counts of contributing to the misconduct of a minor. The theory of the prosecution was that Smith touched the children and had them touch each other for his or their sexual gratification. The photography was, strictly speaking, not directly relevant to the elements of the crimes.

During the trial, the district court allowed the State to admit evidence that Smith had pleaded guilty about 15 years earlier to sex crimes against an underage girl as bearing on his criminal intent in the 2009 case. Similarly, the district court admitted pornography law enforcement officers seized from Smith's home. Some of the materials graphically depicted sex acts involving female minors or models who looked underage and, thus, were different from the photographs Smith took. The titles of those materials were, in a word, salacious. The jury convicted Smith as charged. At a later hearing, the district court

imposed consecutive life sentences on Smith for the Jessica's Law crimes with concurrent sentences on the remaining convictions and various other conditions. The Jessica's Law sentences left Smith first eligible for parole after serving 80 years.

As we indicated, Smith appealed directly to the Kansas Supreme Court. A divided court affirmed the convictions with a majority finding the admission of the pornography to be harmless error. Three justices would have found the error sufficiently prejudicial to warrant reversal of the convictions and would have granted Smith a new trial. 299 Kan. at 976-78 (majority); 299 Kan. at 987-89 (dissent). The court vacated several aspects of Smith's sentences but left intact the controlling life terms and his actuarily unattainable parole eligibility. On remand, the district court resentenced Smith. He did not appeal from the resentencing.

In 2015, Smith filed his motion for habeas corpus relief under K.S.A. 60-1507. The district court appointed a lawyer to represent Smith and conducted an evidentiary hearing about a year later. In his motion, Smith raised an array of claims ostensibly based on the inadequate representation his former lawyer provided leading up to and during the criminal trial. Those issues were narrowed and consolidated in advance of the evidentiary hearing. As we indicated, both Smith and his trial lawyer testified. The district court held the hearing record open at the request of Smith's appointed lawyer because he was trying to locate documents showing Smith's work schedule as an over-the-road trucker. In early January 2017, the lawyer informed the district court the documents could not be found, so the record should be considered complete. The district court promptly filed a 12-page journal entry and order denying the 60-1507 motion. Smith has appealed, and that is what we now have in front of us.

LEGAL ANALYSIS

In this appeal, Smith raises both substantive and procedural challenges to the district court's ruling denying his 60-1507 motion. After outlining our standard of review and the legal principles governing habeas corpus proceedings, we turn to the substantive issues and then address the procedural issues.

A district court has three options in considering a 60-1507 motion. The district court may summarily deny the motion without appointing a lawyer or holding a hearing based solely on a review of the motion and the record in the underlying criminal case. Alternatively, the district court may appoint a lawyer and either conduct a preliminary inquiry to determine whether to hold a full evidentiary hearing or simply jump to a full hearing. *Sola-Morales v. State*, 300 Kan. 875, 881, 335 P.3d 1162 (2014). When we review the denial of a 60-1507 motion after a full evidentiary hearing, as we do here, we accept the district court's findings of fact to the extent they are supported with substantial competent evidence. But we exercise unlimited review of the determinative legal issues. *Bellamy v. State*, 285 Kan. 346, 355, 172 P.3d 10 (2007).

To prevail on an ineffective assistance claim, the movant must show both that his or her legal representation "fell below an objective standard of reasonableness" guaranteed by the right to counsel in the Sixth Amendment to the United States Constitution and that absent the substandard lawyering there is "a reasonable probability" the outcome in the criminal case would have been different. *Strickland v. Washington*, 466 U.S. 668, 687-88, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *Sola-Morales*, 300 Kan. at 882; see *Chamberlain v. State*, 236 Kan. 650, Syl. ¶¶ 3, 4, 694 P.2d 468 (1985) (stating and adopting *Strickland* test for ineffective assistance). Reasonable representation demands that degree of "skill and knowledge as will render the trial a reliable adversarial testing process." *Strickland*, 466 U.S. at 688. A reasonable probability of a different outcome "undermine[s] confidence" in the result and marks the criminal proceeding as

4

fundamentally unfair. 466 U.S. at 694. The movant, then, must prove both constitutionally inadequate representation and sufficient prejudice attributable to that representation to materially question the resulting convictions.

As the United States Supreme Court and the Kansas Supreme Court have stressed, review of the representation should be deferential, and any hindsight criticism should be tempered, lest the evaluation of a lawyer's performance be unduly colored by a lack of success—notwithstanding demonstrable competence. See *Strickland*, 466 U.S. at 689-90; *Holmes v. State*, 292 Kan. 271, 275, 252 P.3d 573 (2011). Rarely should a lawyer's representation be considered substandard when he or she investigates the client's circumstances and then makes a deliberate strategic choice among arguably suitable options. *Strickland*, 466 U.S. at 690-91. Whether a lawyer had made reasoned strategic decisions bears on the competence component of the *Strickland* test.

Regardless of the inadequacy of legal representation, a 60-1507 motion fails if the movant cannot establish substantial prejudice. And the district court properly may deny a motion that falters on the prejudice component of the *Strickland* test without assessing the sufficiency of the representation. *Strickland*, 466 U.S. at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."); see *Edgar v. State*, 294 Kan. 828, 843-44, 283 P.3d 152 (2012); *Oliver v. State*, No. 106,532, 2013 WL 2395273, at *5 (Kan. App. 2013) (unpublished opinion). In other words, even assuming a criminal defendant's legal representation fell below the Sixth Amendment standard, he or she is not entitled to habeas corpus relief if the result would have been no different with competent counsel.

In general, the courts look at a lawyer's overall performance in representing a criminal defendant in determining whether the Sixth Amendment right to counsel has been satisfied, meaning that a minor mistake or even a number of minor mistakes may not breach that duty. See *Harrington v. Richter*, 562 U.S. 86, 110-11, 131 S. Ct. 770, 178

L. Ed. 2d 624 (2011); *Kimmelman v. Morrison*, 477 U.S. 365, 386, 106 S. Ct. 2574, 91 L. Ed. 2d 305 (1986); *Bland v. Hardy*, 672 F.3d 445, 450 (7th Cir. 2012) ("[T]he question under *Strickland* is not whether the lawyer made a mistake, even a serious one; it is whether the lawyer's *overall* performance was professionally competent."). But a single error causing sufficiently substantial legal harm to the defendant to call into question an adverse outcome at trial or on appeal will suffice. See *Miller v. State*, 298 Kan. 921, 938-39, 318 P.3d 155 (2014).

Given those principles, we now look at the substantive aspects of Smith's representation in the criminal case he contends the district court failed to correctly assess as constitutionally inadequate and prejudicial when it denied his 60-1507 motion.

Smith contends his trial lawyer was ineffective for failing to obtain employment records showing Smith had been out of town driving a truck for several weeks leading up to the photo session with the two girls. He says those records and his absence would undercut aspects of the girls' accounts about meeting with him to arrange the session or to acquire the swimsuits. The district court found no constitutional deficiency in the trial lawyer's representation on this score. At the 60-1507 hearing, Smith agreed that before trial he did not discuss with his lawyer that he had been on the road or that logs and other employment documents would corroborate his being out of town.

The point warrants no relief in this collateral attack on the criminal convictions for several reasons. First, we doubt a trial lawyer typically would be ineffective for failing to explore a circumstance like Smith being out of town *before* the alleged criminal conduct, especially when the client doesn't share that information. It is one thing to fail to investigate potential alibi witnesses when a criminal defendant contends he or she did not commit the crime and was elsewhere at the time. It is something else again for a lawyer to leave unexplored a defendant's whereabouts before the alleged crime absent some indication from the client as to how the information might be potentially relevant. Here,

of course, the photo session itself was undisputed, after all, law enforcement officers had the photographs.

Even if we indulged the supposition that the trial lawyer was constitutionally deficient in failing to obtain the employment records, Smith hasn't satisfied the prejudice component of the *Strickland* test. First, of course, he has never produced the records to establish what they would have shown. Again, indulging an assumption the records would demonstrate what Smith contends, we do not see that they would have materially affected the outcome of the trial. At best, they would have shown the girls to have been mistaken about the time sequence of events leading up to the photo session. Those sorts of mistakes don't undermine the girls' accounts about how Smith may have adjusted their bikinis or otherwise touched them during the photo session. Likewise, the photos corroborate the girls' accounts that Smith had them kiss and otherwise touch each other in sexually suggestive ways.

Smith, nonetheless, argues the evidence would have been significant and characterizes the split decision of the Kansas Supreme Court affirming the convictions as illustrating major weaknesses in the prosecution's case. But the argument misses the point of the dissent. The dissenters found the pornography seized from Smith's home and admitted at trial to be so corrosive and unduly prejudicial, especially given the State's theory of the case, that Smith did not receive a fair trial. *Smith*, 299 Kan. at 987. That evidence, however, had no bearing whatsoever on the girls' credibility. And Smith's argument belies the majority's conclusion that the admission of the pornography amounted to harmless error precisely because of the other (and proper) evidence of Smith's guilt, including his earlier conviction for sexually assaulting a girl. 299 Kan. at 978.

We mention that in his 60-1507 motion and to some extent at the hearing, Smith submitted that peripheral discrepancies in the girls' versions of the events rendered their

trial testimony perjurious. (There were minor differences between each girl's account given during the law enforcement investigation and her trial testimony. And the trial testimony from the girls did not perfectly match.) Smith then spun various theories off that premise, suggesting his trial lawyer should have sought a court order excluding the testimony as perjurious and suggesting the prosecutor engaged in misconduct by suborning perjury to convict him. The entire line of argument is faulty: Inconsistencies in factual accounts either from a single witness or across witnesses testifying to the same event do not establish perjury. Without evidence demonstrating a witness' intent to fabricate, they are no more than examples of the common fragility of human perception and recollection. In short, discrepancies in testimony are the everyday stuff of litigation and jury trials. At the 60-1507 hearing, Smith's trial lawyer testified he saw nothing to suggest either girl committed perjury, so he made no such claims or objections. On appeal, Smith does not reprise his arguments premised on purported perjury.

Smith next contends his trial lawyer was constitutionally ineffective for not presenting evidence Smith is gay and, therefore, would not have had the requisite sexual interest in touching the girls or watching them touch each other to be guilty of the felony charges. The jury was aware of Smith's statement to law enforcement officers that he was a homosexual and had sexual interests that did not involve underage girls. At the 60-1507 hearing, Smith's trial lawyer testified that he made a calculated tactical decision to avoid emphasizing sexual orientation as a defense. The lawyer explained that Smith's earlier conviction substantially undermined such a defense and emphasizing Smith's homosexuality would only invite the prosecutor to highlight that conviction as a counterpoint. This is the type of studied litigation strategy that *Strickland* protects in a habeas corpus challenge. The district court correctly declined to grant relief on this issue.

Smith further contends his trial lawyer failed to present mitigating evidence at sentencing. At the 60-1507 hearing, Smith testified that he believed friends of his would have provided statements attesting to his good character and requesting leniency from the

8

district court. At the hearing, the lawyer did not specifically address mitigation evidence from friends and associates of Smith. But the argument fails because Smith did not present any such character witnesses during the 60-1507 hearing or otherwise offer evidence as to what they might have said at his sentencing. Without that sort of factual predicate, Smith cannot demonstrate prejudice satisfying the second part of the *Strickland* test.

Smith's trial lawyer testified that he did not have a psychosexual evaluation of Smith done for purposes of sentencing in light of the past conviction. Given that rather damning criminal history, the lawyer concluded an expert evaluation would be unhelpful. The decision to forgo a clinical evaluation also entails a tactical call sheltered under *Strickland*.

We now turn to Smith's procedural complaints about the district court's handling of the 60-1507 motion. Smith makes two arguments we find both diffuse and unpersuasive.

First, Smith chides the district court for stating in its written ruling that unspecified claims in the 60-1507 motion were or could have been presented in the direct appeal of the criminal case and, therefore, should not be considered in a collateral habeas corpus proceeding. The district court correctly stated that a 60-1507 motion cannot simply extend or repeat a direct criminal appeal. See *State v. Kelly*, 291 Kan. 868, 872, 248 P.3d 1282 (2011). To avert that bar, the movant must show exceptional circumstances establishing why an issue had not been litigated in the direct criminal case. *Bledsoe v. State*, 283 Kan. 81, 88-89, 150 P.3d 868 (2007); *Bruner v. State*, 277 Kan. 603, 607, 88 P.3d 214 (2004). Smith, however, contends the journal entry is deficient because it does not state with particularly what points in the 60-1507 motion were precluded for that reason. We are not persuaded a remand is in order.

9

A district court must make findings of fact and conclusions of law in ruling on a 60-1507 motion, as provided in Supreme Court Rule 183 (2020 Kan. S. Ct. R. 223). Here, the district court technically made a finding; it is, however, sufficiently general that it crosses the threshold of vague, although stopping well short of inscrutable. Smith did not ask for a clarified finding from the district court, and the failure arguably forecloses his procedural complaint here, since our review has not been stymied. See *State v. Moncla*, 269 Kan. 61, 65, 4 P.3d 618 (2000) (remand required only when inadequate findings in 60-1507 proceeding preclude appellate review); *State v. Reed*, 50 Kan. App. 2d 1133, 1139, 336 P.3d 912 (2014).

In his appellate brief, Smith presumably could have identified those issues by comparing the issues the district court expressly addressed in its journal entry with those issues he outlined in his 60-1507 motion and chose to pursue at the evidentiary hearing. Smith has not flagged any of those issues as warranting our review on the merits. We are not disposed to send this matter back to the district court for what would appear to be an empty exercise to enumerate those claims when Smith has not argued any of them would afford him substantive relief.

Finally, Smith repackages this argument as a constitutional due process claim by suggesting the district court's journal entry somehow failed to provide him a meaningful opportunity to be heard. We gather he believes we cannot exercise full appellate review, but we have already explained why we can and have.

Smith also contends the district court's decision to close the evidentiary record when the lawyer handling the 60-1507 motion informed the district court the employment records could not be located amounted to a due process violation. Smith fails to frame a due process violation in that the district court afforded him additional time to obtain the records. And he doesn't show how even more time would have led to a different result, i.e., the records could have been found. The district court was not constitutionally

10

obligated to continue the proceedings indefinitely, especially when Smith's lawyer reported having taken steps to secure those records without success.

Affirmed.