NOT DESIGNATED FOR PUBLICATION

No. 128,410

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JASON LEE MILLER,
*Appellant*.

MEMORANDUM OPINION

Appeal from Cherokee District Court; MARADETH FREDERICK, judge. Submitted without oral argument. Opinion filed June 26, 2026. Affirmed.

*Corrine E. Gunning*, of Kansas Appellate Defender Office, for appellant.

*Andrew J. Lohmann*, assistant solicitor general, and *Kris W. Kobach*, attorney general, for appellee.

Before MALONE, P.J., ATCHESON, J., and MICHAEL B. BUSER, retired Court of Appeals Judge, assigned.

MALONE, J.: Jason Lee Miller appeals his convictions and sentence for three counts of rape, two counts of aggravated criminal sodomy, one count of aggravated indecent liberties with a child, and one count of lewd and lascivious behavior. Miller claims: (1) The State committed prosecutorial error during closing argument; (2) the district court erred when it denied his motion for new trial based on newly discovered evidence; (3) the State presented insufficient evidence to support his conviction of lewd and lascivious behavior; and (4) the district court erred when it denied his request for a

1

departure sentence. After thoroughly reviewing the record and considering the parties' arguments, we find no reversible error and affirm the district court's judgment.

*Factual and procedural background*

At the time the allegations arose, Miller had custody of his two minor children, who we refer to by the pseudonyms Sarah and James. Miller's mother, who we refer to as Grandmother, cared for the children at Miller's home. On November 3, 2019, Sarah and James were playing a game of truth or dare. During that game, Sarah, who was six years old at the time, divulged that Miller had sexually abused her by "put[ting] his privates into her butt" and making her "suck his privates." James immediately went to tell Grandmother what Sarah had told him. Grandmother stopped James, telling him she wanted to hear the allegation directly from Sarah.

When Grandmother spoke to Sarah, she told her that one time Miller had taken her into the bathroom, put lotion on his hand, and rubbed his penis until white stuff came out. Sarah also told Grandmother that Miller had showed her a pornographic video and told her that he "wanted her to do him the same way." Sarah confided that she was afraid and that "she went ahead and she done it anyway." Grandmother was shocked by the allegations. She spoke with her daughter, Miller's sister, who encouraged her to take Sarah to the Cherokee County Sheriff's Office to report Sarah's allegations.

After reporting Sarah's allegations to a deputy, Grandmother took Sarah to the hospital for a sexual assault nurse examiner (SANE) examination. The exam, performed by Wendy Overstreet, included both an interview and a forensic physical examination. Sarah told Overstreet that Miller had "made her suck on his bad spot" on more than two occasions and that he had "pulled down her pants and put his bad spot in her butt . . . and then she said that it hurt." Sarah also told her about the incident where Miller had masturbated in front of her in the bathroom and made her touch his penis. The forensic

2

physical examination revealed no clear physical evidence of sexual abuse, nor any tearing or trauma. Overstreet also noted that Sarah's hymen was still intact.

Following the SANE examination, Sarah was interviewed by Whitney Lovell at the Child Advocacy Center (CAC), where she discussed the same incidents of sexual abuse she had divulged to Grandmother and Overstreet. Sarah explained that Miller masturbated in front of her and he touched her "'bad spots" and that he had "'put his bad spot first in her bad spot and then in the butt.'" Sarah clarified that when she said "'bad spot,'" she meant her vagina and that Miller's "'bad spot'" was his penis.

Detective Travis Fields of the Cherokee County Sheriff's Office interviewed Grandmother, who relayed Sarah's allegations that Miller had masturbated in front of her and shown her a pornographic video on his cellphone. Grandmother did not describe Sarah telling her about being forced to perform oral sex on Miller. Fields' investigation also included performing DNA testing, photographing Miller's house, searching Miller's cellphone and other electronics, searching Grandmother's cellphone, and obtaining video surveillance footage from Miller's house. Fields did not discover any evidence of Miller's DNA on Sarah, nor did he find evidence of pornographic videos on Miller's cellphone or other documentation to support Sarah's allegations.

On February 13, 2020, the State originally charged Miller with one count of rape, one count of aggravated criminal sodomy, two counts of aggravated indecent liberties with a child, one count of aggravated indecent solicitation of a child, and one count of lewd and lascivious behavior. After a preliminary hearing, Miller was bound over for trial on three counts of rape, two counts of aggravated criminal sodomy, three counts of aggravated indecent liberties with a child, and one count of lewd and lascivious behavior.

On October 10, 2023, the case proceeded to jury trial. The State presented the testimony of Sarah, who was 10 years old at the time of the trial, James, who was 11

years old at the time of the trial, Grandmother, Overstreet, Lovell, and Fields. After the State rested, Miller moved for a directed verdict or judgment of acquittal on all charges. The district court denied the motion.

Miller called his sister and Mark Gibson, a close friend, to testify for the defense. Miller also testified on his own behalf, denying all of the allegations. After he rested, Miller reraised his motion for a directed verdict or judgment of acquittal on the lewd and lascivious behavior charge, arguing the State failed to prove that Sarah did not consent to his exposing of his penis and masturbating in front of her. The district court again denied the motion, explaining that Sarah's lack of consent was a question of fact that could be inferred by the jury based on the evidence presented.

Before jury deliberations, the State dismissed two of its three counts of aggravated indecent liberties with a child. During closing argument, Miller's counsel argued the State's case rested entirely on the unreliable recollections of Sarah and lacked any corroborating physical evidence to support her allegations. During the State's rebuttal, in response to Miller's argument, the prosecutor argued that her testimony about explicit matters such as Miller's erection, masturbation, sexual positions, and pornography suggested that she was speaking the truth because a six-year-old would not be aware of such things without personal experience. After considering the evidence and the parties' arguments, the jury found Miller guilty of three counts of rape, two counts of aggravated criminal sodomy, one count of aggravated indecent liberties with a child, and one count of lewd and lascivious behavior.

Miller timely moved for a new trial, in which he alleged several trial errors had deprived him of a fair trial. He also argued that he had uncovered new evidence that Grandmother had presented false testimony and had coached Sarah about the accusations. At a hearing on Miller's motion, Grandmother testified that her testimony at trial was not truthful and that she had coached Sarah to make the accusations so that she could get

4

custody of the children. But the State presented the testimony of Cherokee County Sheriff's Deputy Nate Jones, who had conducted a recorded interview with Grandmother after the trial. In that interview, Grandmother admitted that she had not coached Sarah's testimony. Grandmother also admitted that the family was trying to figure out ways to get Miller out of jail. The recorded interview was admitted into evidence. Jones also testified that the sheriff's office was aware that Miller's friend, Gibson, had accused Grandmother before trial of coaching Sarah and lying about the allegations. This information had been included in a report about the investigation and made available to the parties before trial.

After hearing the testimony, the district court denied Miller's motion for new trial. The district court explained that the revelation about Grandmother lying was not newly discovered evidence because Grandmother had been accused of lying and coaching Sarah before trial. More importantly, the district court also found that Grandmother's testimony was not credible and was not so material that there was a reasonable probability it would produce a different result upon retrial of the case.

Before sentencing, Miller moved for a departure, arguing that he had no prior criminal history and that he had an intellectual disability. Miller called Dr. Robert Barnett, who testified that Miller had an intellectual impairment, had a low risk of reoffending, and showed little evidence of any kind of sexual dysfunction. Barnett also testified that Miller had not expressed any remorse or accepted responsibility for his actions. The district court acknowledged Miller's lack of criminal history and his limited intellectual ability but denied the motion, explaining that Miller had not presented any substantial and compelling reason supporting a departure. The district court sentenced Miller to life imprisonment without the possibility of parole for 25 years on each of the six off-grid convictions and 6 months' imprisonment for the lewd and lascivious behavior conviction. The district court ran three of the hard 25 off-grid sentences consecutively and the remaining counts concurrently. Miller timely appealed the district court's judgment.

5

*Did the State commit prosecutorial error during closing argument?*

Miller argues the State committed reversible prosecutorial error during closing argument when the prosecutor argued in rebuttal that "Sarah's statements corroborated themselves." The State counters that the prosecutor's comments were not a misstatement of the law and did not improperly bolster the victim's credibility. Alternatively, the State maintains that any error was harmless.

An appellate court evaluates claims of prosecutorial error in two steps: First, it considers whether the prosecutor stepped outside the wide latitude they are afforded to conduct the State's case in a manner that does not offend the defendant's constitutional right to a fair trial. *State v. King*, 308 Kan. 16, 30, 417 P.3d 1073 (2018). Second, if the court finds an error occurred, it must decide whether that error is reversible, i.e., the State must prove beyond a reasonable doubt there is no reasonable possibility the error contributed to the verdict. *State v. Blevins*, 313 Kan. 413, 428, 485 P.3d 1175 (2021).

During closing argument, Miller's counsel argued the State had produced no evidence to corroborate Sarah's allegations of her father's abuses. He highlighted the fact that there was no physical evidence of abuse found on Sarah during the SANE examination; that no DNA evidence was recovered; that the searches of Miller's cellphone revealed no proof of his alleged crimes; that Overstreet subjected Sarah to suggestive questioning during the SANE examination; and that Sarah's mother was never interviewed about the allegations. He argued:

> "What we have is a young lady telling a story for whatever reason. Is it true, is it not true, that's for you to decide. Just because you have a cute picture of a six-year-old doesn't mean that's proof beyond a reasonable doubt. There has to be something more than she said this happened. Because Jason Miller has told you it didn't happen."

6

In response to Miller's argument, the prosecutor countered:

"As I said before I have never shied away from the burden. It's beyond a reasonable doubt. And the instruction following No. 6 says it is for you to determine the weight and credit to be given the testimony of each witness, including the defendant. You have a right to use common knowledge and experience in regard to the matter about which a witness has testified. Applying that instruction can we believe that a six-year-old would have the knowledge to make up a story about ejaculate. That a six-year-old child would describe how her father's penis got bigger, smaller and bigger. That a six-year-old child would know that pornographic videos exist and can be shown on a phone. That a six-year-old child would imagine that lotion could be rubbed on a penis and scrubbed until things come out. That a six-year-old child would know to take two dolls, pull their pants down and put them in a missionary position. *You want corroboration there it is.* A child who experienced those things would know those things. And she would be able to describe for you how it hurt." (Emphasis added.)

On appeal, Miller contends that the prosecutor's comment was a misstatement of the law that improperly undermined the State's burden of proof and attempted to bolster Sarah's credibility. It is well settled that the State commits prosecutorial error by misstating the law, misstating evidence, commenting on witness credibility, or shifting the burden of proof to the defendant. See, e.g., *State v. Wright*, 321 Kan. 634, 650-51, 583 P.3d 174 (2026). While the prosecution is given wide latitude to argue reasonable inferences based on the evidence presented at trial, "[p]rosecutors step outside their recognized wide latitude when they state their own belief as to witness credibility." *State v. Waldschmidt*, 318 Kan. 633, 651, 546 P.3d 716 (2024).

Miller contends the prosecutor's comment effectively told the jury that Sarah's testimony was self-corroborating and constituted a misstatement of law. The prosecutor did not tell the jurors that they were obligated to find Sarah's account credible because of her young age. She did not ask the rhetorical question: "Why would a six-year-old lie?" Rather, the prosecutor's comment was a direct response to Miller's argument that there

7

was no physical evidence to support Sarah's testimony. She suggested that the nature of Sarah's allegations, and the sexually explicit details she gave, supported that her accusations were true because a six-year-old would not know about such things without first-hand experience. And the prosecutor made clear the burden was on the State to prove the charges beyond a reasonable doubt. Based on Miller's arguments on appeal, we find the prosecutor's comment on the matter was not a misstatement of the law.

Contrary to Miller's argument, the prosecutor's comment also did not improperly bolster Sarah's credibility. Nor did the prosecutor offer any impermissible personal opinion about Sarah's credibility. Although there was no physical evidence to directly support Sarah's statements, the prosecutor highlighted the improbability that a six-year-old girl would have the knowledge to fabricate the descriptive stories of sexual abuse without experiencing them personally. When read in the full context of the parties' closing arguments, the prosecutor's comment about reasons Sarah's story could be believed was not an improper comment on her credibility but a response to Miller's questioning of why there was no physical evidence to support her allegations. Miller has not established that the prosecutor committed any error during closing argument. We need not reach the second step of the prosecutorial error inquiry and find that Miller is entitled to no relief.

*Did the district court err when it denied Miller's motion for new trial?*

Miller next claims the district court erred when it denied his motion for new trial based on the claimed newly discovered evidence that Grandmother provided false testimony and coached Sarah's testimony. Miller first argues that Grandmother's posttrial statements were "newly discovered evidence" that supported a motion for new trial. Second, he argues the statements were material and would likely produce a different result upon retrial. The State argues the district court acted within its discretion when it denied Miller's motion because the newly proffered evidence could have been produced at trial and was not of sufficient materiality to have produced a different verdict.

8

An appellate court reviews a district court's denial of a motion for a new trial based on newly discovered evidence for an abuse of discretion. This court will only find an abuse of discretion if the decision is based on an error of fact or law or is otherwise arbitrary, fanciful, or unreasonable. *State v. James*, 319 Kan. 178, 182, 553 P.3d 308 (2024). Miller bears the burden to show that the district court abused its discretion. See, e.g., *State v. Warren*, 302 Kan. 601, 614, 356 P.3d 396 (2015).

> "When seeking to demonstrate that the interest of justice warrants a new trial based on newly discovered evidence, the defendant bears the burden of establishing that the newly proffered evidence is indeed '"new"—that is, it could not, with reasonable diligence, have been produced at trial' and that the evidence is so material 'that there is a reasonable probability it would produce a different result upon retrial.' *State v. Moncla*, 269 Kan. 61, 64, 4 P.3d 618 (2000)." *James*, 319 Kan. at 182.

As noted above, after Miller's trial, Grandmother went to the Cherokee County Sheriff's Office and presented a written statement confessing to lying during her testimony and stating that she had coached Sarah in making allegations against Miller. But while she was speaking to the sheriff's deputy, Grandmother admitted that she had not coached Sarah's testimony and that she only went to the police with her story to try to get Miller out of jail. The deputy also testified that the sheriff's office was aware that Miller's friend, Gibson, had accused Grandmother before trial of coaching Sarah and lying about the allegations. This information had been included in a report about the investigation and made available to the parties before trial.

The district court found that the revelation about Grandmother's lying was not newly discovered evidence because Grandmother had been accused of lying and coaching Sarah before trial. But we cannot agree with this legal conclusion. The fact that Gibson had suggested before trial that Grandmother had fabricated the allegations does not mean that Grandmother's posttrial recantation did not qualify as "new" evidence that was unavailable to Miller at the time of his trial. While Grandmother's posttrial

9

recantation may not have surprised the parties, it still amounted to newly discovered evidence that could be offered to support the motion for new trial.

But the district court also found that Grandmother's recantation was not credible and was not so material that there was a reasonable probability it would produce a different result upon retrial of the case. After hearing the evidence offered to support the motion for new trial, the district court observed that Grandmother's testimony was inconsistent and contradictory. The district court found that Miller's "family was conspiring to make up this story of coaching in order to try to overturn the defendant's convictions." The Kansas Supreme Court has explained that "[i]n determining whether new evidence is material, the trial judge must assess the credibility of the newly proffered evidence, and the appellate court will not reassess the district judge's determination of credibility from such a hearing." *State v. Ashley*, 306 Kan. 642, 650, 396 P.3d 92 (2017).

We do not reweigh the district court's credibility findings. The district court's finding that Grandmother's posttrial recantation was not credible was supported by the evidence offered to support the motion for new trial. Grandmother's shaky recantation would not have negated Sarah's testimony about her father's illicit conduct, which formed the bulk of the State's case against Miller. Sarah's testimony was corroborated by her consistent statements to Overstreet and Lovell. Miller's "new" evidence offered to support the motion did not establish a "reasonable probability" that it would produce a different result upon retrial. *James*, 319 Kan. at 182. We conclude Miller has failed to show the district court abused its discretion in denying his motion for new trial.

*Did the State present sufficient evidence to support Miller's conviction of lewd and lascivious behavior?*

Miller next claims the State presented insufficient evidence to support his conviction of lewd and lascivious behavior. This conviction arose from the incident in the

bathroom where Sarah described that Miller exposed his penis and masturbated in her presence. Miller argues that the State presented no evidence that Sarah did not consent to Miller's conduct, which is an element of the crime. See K.S.A. 21-5513(a)(2). The State maintains that as a matter of law Sarah could not consent because she was six years old, or, in the alternative, it presented sufficient circumstantial evidence to support the finding that Sarah did not consent to Miller exposing his penis to her.

When considering a challenge to whether the State presented sufficient evidence to support a conviction, an appellate court must determine whether a rational fact-finder could find the defendant guilty beyond a reasonable doubt, viewing the evidence in a light more favorable to the State. This court will not reweigh the evidence, resolve evidentiary conflicts, or reassess witness credibility. *State v. Anderson*, 318 Kan. 425, 441, 543 P.3d 1120 (2024). To the extent resolution of Miller's challenge requires statutory interpretation of K.S.A. 21-5513, this court may exercise unlimited review. *State v. Gomez*, 320 Kan. 3, 13, 561 P.3d 908 (2025).

Lewd and lascivious behavior is "exposing a sex organ in the presence of a person who is not the spouse of the offender and *who has not consented thereto*, with intent to arouse or gratify the sexual desires of the offender or another." (Emphasis added.) K.S.A. 21-5513(a)(2). Although the crime is a felony if committed in the presence of a person under 16 years of age, the statute does not otherwise distinguish a victim's age to determine their competence to consent to the exposure. K.S.A. 21-5513(b)(2).

Miller argues that "there is nothing in the terms of the statute that says, as a matter of law, a person under a certain age is legally unable to consent to the exposure." The State argues that because a six-year-old child cannot consent to another person exposing a sex organ with the intent of satisfying anyone's sexual desires, it was not required to prove that Sarah did not consent to Miller's actions. In support of this argument, the State cites *State v. Fike*, 243 Kan. 365, 757 P.2d 724 (1988), in which the Kansas Supreme

11

Court addressed the crime of aggravated sexual battery, which like lewd and lascivious behavior, required a lack of consent as an element of the offense. The *Fike* court stated:

> "Under the present sexual crimes statutes, most of which are found at K.S.A.1987 Supp. 21-3501 et seq., we have a variety of statutes defining sexual crimes wherein many set a statutory age below which the crime is committed regardless of the actual consent of the underage party. While it is true that most of the statutes which refer to children set the statutory age at 16, some set a different statutory age. See K.S.A. 1987 Supp. 21-3519 (promoting sexual performance by a minor—age 18); K.S.A.1987 Supp. 21-3603 (aggravated incest—age 18). Thus, there is no one age which can be referred to as the 'age of consent' for all sexual crimes. The statute now before us, aggravated sexual battery, not only requires that the alleged victim be below the age of 16, but also that there must be an actual lack of consent by the victim. If the legislature had not meant to require an actual lack of consent there would have been no reason to include it in the statute. *That is not to say that in every case of aggravated sexual battery there must be an actual, knowing lack of consent to the sexual acts involved. Obviously, a child of tender years or mentally incapacitated, for example, lacks the legal capacity as a matter of law to give actual consent. However, that is not to say that for the purposes of this statute every child under 16 is legally incapable of giving consent.* To so hold would make the statutory language 'who does not consent thereto' meaningless." (Emphasis added.) 243 Kan. at 372-73.

Citing the rationale in *Fike*, this court has ruled "that as a matter of law a 9-year-old girl lacks the legal capacity to consent to a sexual battery." *State v. Reynolds*, No. 77,096, 1997 WL 35436305, at *2 (Kan. App. 1997) (unpublished opinion). The State argues that the same reasoning should apply to the crime of lewd and lascivious behavior.

We need not resolve whether, as a matter of law, a six-year-old girl lacks the legal capacity to consent to an adult man exposing his penis in her presence with the intent to arouse or gratify anyone's sexual desires. Kansas courts have long recognized that even the gravest crime can be proved with circumstantial evidence and the logical inferences properly drawn from that evidence. *State v. Chandler*, 307 Kan. 657, 669, 414 P.3d 713

(2018). Moreover, "[s]ufficient evidence, even circumstantial, need not rise to such a degree of certainty that it excludes any and every other reasonable conclusion." *State v. Hilyard*, 316 Kan. 326, 331, 515 P.3d 267 (2022). While the State did not produce direct evidence that Sarah did not consent to her father exposing his penis to her for his sexual gratification, there was sufficient circumstantial evidence to infer as much.

Sarah did not testify about the incident in the bathroom where Miller exposed himself, masturbated, and ejaculated in front of her. Evidence of this incident was introduced through the testimony of Grandmother and Overstreet who relayed what Sarah had told them about the incident. In her statements to others, Sarah repeatedly referred to male genitals as "bad" spots and described Miller touching himself until "icky gray stuff came out." Based on the evidence that was presented, a reasonable jury could have found that Sarah did not consent to Miller's actions. Although Sarah does not appear to have explicitly stated that she did not want to be exposed to Miller's actions, such an inference could be reasonably reached based on her age, understanding, and descriptions of the events. We also note that Miller presented a general denial defense to the charges, and his defense to the lewd and lascivious charge was not based on whether the State proved lack of consent. When viewing the evidence in the light most favorable to the State, we find there was sufficient evidence to establish lack of consent to sustain a conviction for lewd and lascivious behavior. Miller does not challenge any other element of the crime.

*Did the district court err when it denied Miller's request for a departure sentence?*

Finally, Miller claims the district court erred when it denied his departure motion because he presented substantial and compelling circumstances to justify a durational departure to the sentencing grid. The State maintains the district court acted within its discretion when it declined to grant Miller a departure sentence because the court properly considered the mitigating circumstances Miller presented and applied the applicable legal standards to conclude that a departure was not warranted.

13

Generally, sentencing under K.S.A. 21-6627(a)(1), commonly referred to as Jessica's Law, provides for a life sentence with a mandatory minimum term of imprisonment. But the sentencing statute does provide the possibility for the imposition of a departure from the mandatory minimum sentence. If the conviction is the offender's first Jessica's Law conviction, a district court may depart from the mandatory minimum and impose a sentence under the Kansas Sentencing Guidelines Act, K.S.A. 21-6801 et seq., if, "following a review of mitigating circumstances," the court finds substantial and compelling reasons to do so. K.S.A. 21-6627(d)(1); *State v. Powell*, 308 Kan. 895, 902, 425 P.3d 309 (2018). An appellate court reviews a district court's decision on a departure sentence for an abuse of discretion—that is, whether the court made an error of fact or law or its decision was unreasonable. 308 Kan. at 902-03.

When deciding a departure motion in a Jessica's Law case, a district court must review the mitigating circumstances without weighing them against any aggravating circumstances. The court then determines, based on all the facts of the case, "'whether the mitigating circumstances rise to the level of substantial and compelling reasons to depart from the otherwise mandatory sentence.'" 308 Kan. at 913-14. And "if substantial and compelling reasons are found for a departure to a sentence within the appropriate sentencing guidelines, the district court must state on the record those substantial and compelling reasons." *State v. Jolly*, 301 Kan. 313, 324, 342 P.3d 935 (2015).

A departure may be justified by the collective factors even if no one factor, standing alone, would justify a departure, so long as they constitute a substantial and compelling basis. *State v. Brown*, 305 Kan. 674, 694, 387 P.3d 835 (2017). A single mitigating factor alone can constitute a substantial and compelling reason for departure. *Jolly*, 301 Kan. at 327. Mitigating factors that justify a departure in one case may not justify a departure in all cases. *State v. Randle*, 311 Kan. 468, 482, 462 P.3d 624 (2020).

When a district court denies a departure sentence, it need not affirmatively articulate that it refrained from weighing mitigating and aggravating circumstances. *Powell*, 308 Kan. at 908. Nor is the court required to make findings or state its reasons when denying a request for departure from the mandatory minimum under Jessica's Law. See *State v. Dull*, 298 Kan. 832, 841-42, 317 P.3d 104 (2014).

At sentencing, Miller argued that a departure was warranted because (1) he had no criminal history, (2) he had impaired intellectual abilities, (3) the psychosexual evaluation performed by Barnett found his likelihood of recidivism was low, and (4) he was not diagnosed with a sexual behavior disorder. The district court listened to Miller's arguments, noted the mitigating factors that Miller raised, but denied the motion, finding these reasons were "not substantial and compelling to support a departure."

The district court was not required to affirmatively state its reasons for denying the departure motion, i.e., it was proper for the district court to simply find that Miller had failed to present substantial and compelling grounds to depart. Although Barnett testified that Miller had impaired intellectual abilities, Barnett also testified that Miller showed no remorse or responsibility for his actions. The district court expressly considered the mitigating circumstances that Miller presented and applied the proper legal standards in determining whether a sentencing departure was warranted. Miller does not argue the court's decision was based on an error of fact or law. And a reasonable judge could agree that there were not substantial and compelling mitigating circumstances that warranted a departure. Based on the record for our review, we conclude the district court did not abuse its discretion by denying Miller's request for a departure sentence.

Affirmed.